## BALDWIN, STATE TREASURER, ET AL. v. SCULLION

(No. 1995; November 24, 1936; 62 Pac. (2d) 531)

For the plaintiffs in error, there was a brief by *Ray E. Lee*, Attorney General; *Thos. F. Shea*, Deputy Attorney General, and *Wm. C. Snow*, Assistant Attorney General, all of Cheyenne, and oral argument by *Wm. C. Snow*.

For the plaintiff in error, The Texas Company, there was a brief by *Y. A. Land* of Denver, Colorado, and *Hagens & Wehrli* of Casper, and an oral argument by *G. R. Hagens*.

For the defendant in error, there was a brief and oral argument by *Harold I. Bacheller* and *William B. Cobb* of Casper.

RINER, Justice.

This case chiefly involves the proper construction of certain provisions of the Workmen's Compensation

Law of this state, Chapter 124, W. R. S. 1931. The facts material to be considered are substantially these: H. Scullion, the defendant in error, on the 15th day of July, 1934, was an employee of the plaintiff in error, The Texas Company, and engaged in the work of assisting in the unloading of some heavy steel pipe, the pieces thereof each being about eighteen feet long, four inches in diameter and one-half inch thick, weighing approximately 350 pounds. The sections of pipe were being transferred from a truck to a pile of this material, and the employee stood between the truck and the pile. A fellow workman allowed a piece of pipe to get away from him on the truck, it rolled down and its end struck Scullion on the right hip. He continued to work, although experiencing a certain amount of pain, which at first quieted down and then commenced to get worse. At length, in order to ascertain what was causing the trouble, in August, 1934, he took a vacation of several weeks from his work, so that he could obtain medical advice.

On the 24th of that month Scullion consulted Dr. McLellan, the employer's physician, doing so at the request of Mrs. Connors, the first aid nurse of The Texas Company. It was her duty, she testified, to take care of all minor injuries, and when an accident happened to a company employee, he was required to report to her, and she would either take him to the doctor or send him as necessary. Included as part of her work was the duty also of making out accident reports in Workmen's Compensation cases affecting her employer. Dr. McLellan had an X-ray picture made of that area of Scullion's body in which he complained of pain, i. e., the sacro-illiac joints, told the man he had arthritic rheumatism, gave him some medicine, advised him to have his teeth taken out, and then come back in thirty days.

The employee preferring his own physician, Dr.

Riach, went to the latter shortly afterward, told him of Dr. McLellan's diagnosis and requested medicine to ease the pain. Dr. Riach treated him with medicines until January, 1935. During that period Scullion had continued with his employment, but was obliged to stop work in the early part of the month last mentioned. About that time the employee requested that Dr. Riach have an X-ray picture taken of his hip. Several of these were procured, and the doctor upon examining them diagnosed Scullion's condition as due to a fracture or separation of à small fragment of spicule of bone from the upper edge of the posterior rim of the acetabulum, and attributed it to the accident above described. His physician thereupon advised Scullion to consult a bone specialist, and accordingly the employee, on March 6, 1935, went to Dr. Orr in Lincoln, Nebraska, for examination and treatment, who gave him a physical examination, took some X-ray pictures of his right hip and advised a course of procedure to correct the trouble. This practitioner's conclusions were substantially the same as to the man's condition and the cause thereof as those reached by Dr. Riach.

On April 10, 1935, both the employer, The Texas Company, and the employee, Scullion, filed reports of the accident in question in the office of the clerk of the district court of Natrona County. April 23rd following, the employee filed his claim for compensation on account of the injury suffered, alleging disability from January 17 to April 17, 1935, and that he was then unable to state whether that condition was total or partial permanent disability. This claim was evidently sent to the clerk of the district court by The Texas Company, as is evidenced by a letter signed by its superintendent of even date with the claim, addressed to the clerk and reading:

"Attached herewith you will find Application and Claim for Award from H. Scullion, CW-#63, June 21st,

1934; for temporary total disability from Jan. 17th, 1935.

"This claim is in order and should be paid.

"Reason for delay in filing this claim is that accident was not reported until in January, 1935."

On the file date of the claim aforesaid an order of award was made by the court, wherein, among other facts, it was found in substance that Scullion was injured about July 15, 1934; that while he and fellow workmen were unloading pipe from a truck he was struck a glancing blow over the right hip with the end of a pipe; that the nature of the injury was "a fragment of bone lying within capsule of the hip joint with a sciatic neuritis"; that the time of his disability extended from January 17 to April 17, 1935, inclusive. Thereafter and until October 18, 1935, sundry orders for compensation to said employee and payment for services rendered by the several physicians who attended him were made, most of which were requested by the employer to be entered as covering claims which were, as it stated, "in order and should be paid."

Under date of October 17, 1935, however, the employer by its superintendent, Wilking, notified the presiding district judge of the Seventh District that it was disputing Scullion's claim for compensation payments. Accordingly they were thereafter discontinued and the matter was held in abeyance pending hearing. On April 20, 1936, evidence was taken in the case on behalf of both the employee and employer, who were at the time duly represented by counsel, with the result that on May 6, 1936, the court made an order continuing the workman's compensation, it being found by the court that the total temporary disability status of the employee was by the order of April 23, 1935, aforesaid, still continuing. Motion for a new trial was made in apt time by the employer and overruled by the court, whereupon the matter was brought here by proceed-

ings in error to review the order of May 6th for additional compensation.

Other facts will be mentioned as needed in connection with a due consideration of the questions submitted.

The principal contention advanced in behalf of the plaintiffs in error was that the court was without power to consider the employee's claim at all inasmuch as it was filed too late. The law in force at the time the accident and compensable injury occurred and which, as the plaintiffs in error assert, we shall assume should control the case, is Section 124-112 W. R. S., 1931. The material portions thereof read:

"Whenever an accident occurs, causing injury to any workman engaged in any of the extra-hazardous employments defined by this chapter, it shall be the duty of the employer and the injured employe, or someone on his behalf, or in behalf of the injured employe's dependents, if he be killed or dies from the injury, within 20 days thereafter to make a report of such accident and the apparent injury resulting therefrom and to file said report in the office of the clerk of the district court of the county wherein such accident occurred. * * *"

After prescribing the contents of this report, imposing a penalty on the employer for wilful failure or neglect to make it, and permitting the making of both these reports on printed forms prepared by the state treasurer, the statute declares that:

"No order or award for compensation shall be made unless, in addition to the reports of accident, an application or claim for award is filed by the injured workman, or someone on his behalf, or in case of the death of the injured workman, by his dependents or some one in their behalf, with the clerk of the district court in the county wherein such accident occurred, within five months after the day on which the injury occurred; provided, however, if the employe's report of accident is filed within the prescribed period for filing

an employe's report of accident, the period of limitation for the filing of such claim shall be nine months."

In this connection our attention is called to the case of Martini et ux v. Kemmerer Coal Company, 38 Wyo. 172, 265 Pac. 707, where it was held under the law as it then stood (§ 4326 Wyoming Compiled Statutes, 1920, as amended by Chapter 60, Paragraph 6, of the Session Laws of 1923) that a claim for compensation made on April 8, 1925, by the surviving parents of a workman who was killed in a mine disaster on August 14, 1923, was filed too late, the statutory language requiring such filing of the claim for compensation to be "within twelve months after the day upon which the injury occurred or the right thereto accrued." This statute was quite properly held to be mandatory. It was obvious that the accident and resulting injury, i. e., the workman's death, were, so far as appears in the case, identical in point of time. At any rate it was unnecessary then to determine whether a distinction should be held to exist between the words "accident" and "injury," as employed in the section mentioned.

The contention is now presented on behalf of the employee that as it did not become apparent to Scullion or the physicians who attended him until in January, 1935, that he had received a compensable injury under the law, his claim for compensation was filed in ample time. It will be observed that under the statute the date for filing the employer's and employee's reports of accident is twenty days after "an accident occurs causing injury to" the workman. The only penalty imposed for failure or neglect to make a report appears to be imposed upon the employer alone and the neglect of duty must in such case be "wilful." However, if a claim for an award is not filed by the workman "within five months after the day on which the injury occurred" no award at all may be given him,

the court under the Martini case decision, supra, being powerless to act.

It should be kept in mind that the law employs the terms "accident causing injury" and "injury" as the several starting points, respectively, from which the time commences to run for filing reports and for filing a claim for award. It will be of assistance to consider at this point how the authorities have regarded such statutory language.

In Kropp v. Parker, Deputy Commissioner, et al., 8 Fed. Supp. 290, a case arising under the federal Longshoremen's and Harbor Workers' Compensation Act, the law provided that "the right to compensation for disability under this chapter shall be barred unless a claim therefor is filed within one year after the injury." The facts were that on or about the 25th of March, 1932, the claimant Kropp, while performing services for his employer upon the navigable waters of the United States, was struck on the head by a heavy wooden block accidently caused to fall through an open hatchway, beneath which Kropp was working installing a rail around the engine in the hold of a dredge. He was dazed for a moment or two, but after first aid dressing had been administered, he returned to work on the dredge. He continued to work regularly thereafter, but complained at different times of pain in the head. On June 1, 1933, Kropp informed his employer he could no longer bear the pain in his head and asked to be referred to a doctor. June 19, 1933, claimant entered a hospital, and after his head had been X-rayed, a brain specialist operated and removed a cerebellar tumor from the back part of Kropp's head. The tumor thus removed, which first caused the workman's disability on June 3, 1933, when medical treatment began, was determined to be in direct causal relationship to the accident above described. The claim for compensation was not filed until June 22, 1933,

more than one year after the accident happened. The deputy commissioner who found these facts ordered the claim rejected upon objection thereto being made by the employer and the insurance carrier. Reversing this order, the United States District Court for the District of Maryland in the course of a careful review of the authorities said:

"Under statutes similarly worded, the great majority of the decisions interpret and apply the word 'injury' in the sense of 'compensable injury'; and therefore in numerous cases involving facts substantially similar to those here existing, it has been held this claim was not barred by the statute."

The law of Texas provided that "no proceeding for compensation for injury under this law shall be maintained * * * unless a claim for compensation with respect to such injury shall have been made within six months after the occurrence of same," the Industrial Accident Board for good cause in meritorious cases being authorized to waive a strict compliance with this limitation. (Article 8307, Sec. 4a, Rev. St. of Texas, 1925.) On September 29, 1930, November 19, 1931, and December 20, 1931, a claimant was rendered unconscious through gas thrown out by accidental occurrences in the smelting processes of the Nichols Copper Company. He continued to work after the last gassing, though at lighter employment. In August, 1932, claimant's physician concluded that claimant was totally and permanently disabled through his heart being very seriously affected by these accidents, and on November 25, 1932, such a claim was presented to and allowed by the Board. Affirming this action of the Board in Fidelity & Casualty Company of New York v. McKay, et al., 73 Fed. (2d) 828, the Circuit Court of Appeals for the Fifth Circuit said:

"The Texas courts have held that the occurrence of the injury does not mean the occurrence of the acci-

dent which results in injury, but refers to the development of the result to the point that a state of facts exists which makes compensation due. Texas Employers' Insurance Association v. Wonderley (Tex. Civ. App.) 16 S. W. (2d) 386; Texas Employers' Insurance Association v. Fricker (Tex. Civ. App.) 16 S. W. (2d) 390. Although for rest and recuperation McKay on January 1, 1931, took temporarily a less remunerative job, he lost no time and was thought to be in fact not incapacitated, and it may well be denied that a claim for compensation could have been filed until the serious effects on his heart were discovered in June. It was filed within six months from that time. But if it should have been made within six months from January 1st, the delay was due at first to the doubt concerning injury and later to efforts to ascertain the real extent of the disability and to give the employer and the insurer opportunity to satisfy themselves and to avoid litigation if possible. The accidents were well known at their happening, and no possible prejudice arose from the delay to file claim. The board entertained it, finding that good cause existed for the delay up to the time of filing, and the jury did the same. Good faith and reasonable diligence under the circumstances are enough. Gulf Casualty Co. v. Taylor (Tex. Civ. App.) 67 S. W. (2d) 415; Security Union Ins. Co. v. Hall (Tex. Civ. App.) 37 S. W. (2d) 811; Consolidated Underwriters v. Seale (Tex. Civ. App.) 237 S. W. 642. The claim was not as a matter of law barred.

See also Texas Employers' Insurance Association v. Herron, 29 S. W. (2d) 524; Jarrett v. Travelers' Insurance Company, 66 S. W. (2d) 415.

The law of Missouri prescribed that: "No proceedings for compensation under this act shall be maintained unless a claim therefor be filed with the commission within six months after the injury or death." Claimant failed for over a year to file his claim for injury to his eyesight, which the evidence showed was a compensable one, within ninety days after the accident, as he had practically lost the sight of his right eye within that time. Holding that no award could be

made, in Wheeler v. Missouri Pac. R. Co., 42 S. W. (2d) 579, 328 Mo. 888, the Supreme Court of Missouri in the course of its discussion of the case said, employing and affirming the language of the state court of appeals:

" 'Under some compensation statutes the period of limitation for the filing of a claim with the commission commences to run with the time of the accident. However, in view of the peculiar wording of our statute, the limitation does not begin to run until a compensable injury has been received. There is a distinction between an accident and an injury. See Johansen v. Union Stock Yards Co., 99 Neb. 328, 156 N. W. 511; Cooke v. Holland Furnace Co., 200 Mich. 192, 166 N. W. 1013, 1015, L. R. A. 1918E, 552. The injury is not the accident but the result of the accident. If the result is delayed the injury is delayed. Cooke v. Holland Furnace Co., supra.

" 'The parties hereto do not agree as to at what time an injury is said to have occurred. Defendant claims that "injury," as that word is used in the act, means that time after the accident when it becomes reasonably discoverable and apparent that a compensable injury has been sustained. On the other hand claimant seems to contend that the word "injury" means the specific disability for which a claim for compensation is made. Compensation is sought in the case under the provisions of section 17 of the Workmen's Compensation Act, which provides for compensation for the "complete loss of the sight of one eye" as a permanent partial disability. However, the act provides for other character of compensation, section 13 of the act provides compensation in the way of medical aid, section 15, for temporary total disability, section 16, for temporary partial disability. Section 17 (under which the claim is made in the case) provides for permanent partial disability.

" 'We do not think that the Compensation Act contemplates a construction such as claimant would have us give it. It was stated by the St. Louis Court of Appeals in Schrabauer v. Schneider Engraving Product, Inc., 25 S. W. (2d) 529, 532: "We can readily

imagine that such an accident might easily occur as to produce a latent and progressive condition, showing no appreciable ill effects at the time, but which would later culminate in a compensable injury. It was undoubtedly for the purpose of protecting the employee's rights under such a situation that the Legislature in its wisdom saw fit to make the limitation run from the date of the injury, and not from the date of the accident." ' "

See also Kostron v. American Packing Co., 45 S. W. (2d) 871, 227 Mo. App. 34; Gleason v. Titanium Pigment Co., 93 S. W. (2d) 1039, 1043 (Mo. App.), decided May 5, 1936.

The Workmen's Compensation Act of Arizona declared that: "No application shall be valid or claim thereunder enforceable unless filed within one year after the day upon which the injury occurred or the right thereto accrued." Section 1447 Revised Code of 1928. An employee was struck across the mouth by the kick-back of the crank handle of a gasoline motor, which he was endeavoring to start on April 29, 1931. This inflicted a severe puncture entirely through his lower lip, which seems to have healed within due time. Later a cyst appeared on the site of the scar left by the wound. This was removed in February, 1932. Another growth (a squamous cell carcinoma) then appeared there, which was also removed by surgery, in March, 1933. Because of the cancerous condition remaining after the squamous cell carcinoma had been removed, on April 3, 1933, "a radial dissection" of the lip was performed, a V-shaped piece of tissue being taken out, followed by therapeutic X-ray treatments. The last operation left a permanent disfigurement. The employee lost no time from his work, except the one day immediately after the accident with the crank handle. He did not work from March 13 to April 30, 1933, due to the operation of April 3. He suffered, as has been noted, a permanent disfigurement of his face

because of the injury to his lip, though his ability to work seems not to have been impaired. He made no claim for compensation until May 11, 1933. The question presented then was as to the date on which his right to a claim for disfigurement arose. In Hartford Accident & Indemnity Co. v. Industrial Commission, et al., (Ariz.) 29 Pac. (2d) 142, the court queried whether this date should be regarded as that of the original accident or that of the removal of the cyst or that of the removal of the carcinoma or that of the final operation on April 3. The contention of the insurer was that the right to the compensation dated from the original injury and that the claim should have been filed within one year from that date. Holding against this contention and affirming an award to the employee, the court remarked:

"The cyst and the carcinoma on respondent's face were disfigurements, it is true, but they did not in any way incapacitate respondent to perform his work, nor were they regarded as other than temporary. The surgeon could, as he did, remove them. The permanent disfigurement was occasioned when the piece of tissue in which these abnormal growths kept recurring was cut from respondent's face. Then, and not until then, had the respondent suffered in a way from the blow on his lip that the law could compensate him for. The date of that operation is the one from which the limitation against his claim began to run."

Proceedings under the California Workmen's Compensation Act were required to be commenced for the collection of certain disability payments "within six months from the date of the injury." (Statutes 1931, page 2372, Sec. 11.) An application for compensation filed February 11, 1935, for an accident suffered July 21, 1932, was held in Continental Casualty Co. v. Industrial Accident Commission, 11 Cal. App. (2d) 619, 54 Pac. (2d) 753, not to be barred by this limitation statute where at the time of the accident the employee

was not incapacitated and did not discover that a bone of his wrist was broken until December 15, 1934, when he experienced the second accident. February 11, 1935, also the workman filed his application for the adjustment of his claim growing out of the second injury. The insurer insisted that the proceedings were not instituted within six months following the fracture of the bone. The court relied upon the decision of the Supreme Court of California in Marsh v. Industrial Accident Commission, 217 Cal. 338, 18 Pac. (2d) 933, where it was held that:

"The term 'injury' then is to be understood as connoting a compensable injury, and is correlated to an incapacity or disability justifying a compensatory award. Dombrowski v. Jennings & Griffin Co., 103 Conn. 720, 131 A. 745. Injury and compensable disability are thus more nearly synonymous expressions than are date of injury and date of accident."

Applying this rule the court's conclusion is announced thus:

"We must conclude that the injury to Glantz occurred when it was discovered that he had a broken bone in his left wrist which would require an operation to cure, which would incapacitate him from working, and would justify a compensatory award. Prior to that time he did not know the nature of his injury, had not been prevented from working for the required period, and his earning capacity had not been seriously impaired. It is true that he suffered pain and did lighter work than before July 21, 1932, but he did not suffer a compensable injury at that time as defined by the Supreme Court in the Marsh Case. It follows that his application for compensation was not barred by the provisions of section 11 of the Workmen's Compensation Insurance and Safety Act of 1917, as amended."

Section 17 of the Maine Workmen's Compensation Act contained this language:

"No proceedings for compensation for an injury under this act shall be maintained * * * unless the claim

for compensation with respect to such injury shall have been made within one year after the occurrence of the same." Laws 1919, c. 238.

Construing the effect of this statute in Hustus' Case, 123 Me. 428, 123 Atl. 514, the court said:

"The defendants contend that the injury occurs at the time of the accident even though no incapacity results until some later time. On the other hand the plaintiff maintains that the injury occurs when and not until it results in incapacity and thus becomes compensable. The decree below in favor of the petitioner is attacked on no other ground. If the petitioner's theory of interpretation is correct, he is entitled to compensation. Otherwise his claim is barred because, while made within a year from the time of actual disability, and hence within a year after he became entitled to compensation, it was not made within a year after the happening of the accident.

"In the last analysis the case depends upon the interpretation of the word 'injury' as used in section 17. If it is to be construed literally as meaning any impairment or derangement of the body or mind, though not incapacitating and not compensable, the defendants are right. But, if the word injury as used in this section means accidental injury which has resulted in loss of earnings, then the petitioner's contentions must be sustained. The petitioner is entitled to prevail for,

"1. Under section 17 notice must be given within 30 days after happening of accident, and claim made within one year after occurrence of injury. The reasonable inference is that these contrasted phrases were used intentionally and for the purpose of indicating that the two limitations do not necessarily begin to run at the same time.

"2. The injured workman has a year to make 'claim for compensation with respect to such injury.' This means an incapacitating injury, for such injuries only are compensable."

The following excerpt from the opinion of the Supreme Court of Washington in Stolp v. Department of Labor and Industries, 138 Wash. 685, 245 Pac. 20,

indicates the views of that court concerning the import of a statute closely resembling that at bar and with facts analogous:

"There is but one question in the case, and that is whether the claim was filed in time. It was filed within 4 months after the respondent discovered that he had lost the sight of his eye, but not within one year after he had struck his eye on an air compressor pipe. Section 7686, Rem. Comp. Stat. subd. (d), provides that:

" 'No application shall be valid or claim thereunder enforceable unless filed within one year after the day upon which the injury occurred or the right thereto accrued.'

"Section 7675, among other things, provides that:

" '* * * The words 'injury' or 'injured' as used in this act refer only to an injury resulting from some fortuitous event as distinguished from the contraction of disease. * * *'

"In Stertz v. Industrial Insurance Commission, 158 P. 256, 91 Wash. 588, Ann. Cas. 1918B, 354, it was held that 'fortuitous event' meant 'accident,' and that there was no difference in meaning between the two. 'Accident,' as defined by Webster's New International Dictionary is:

" 'An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event; chance; contingency; often an undesigned and unforeseen occurrence of an afflictive or unfortunate character.'

" 'Injury' by the same authority is defined as:

" 'Damage or hurt done to or suffered by a person or thing; detriment to, or violation of, person, character, feelings, rights, property, or interests, or the value of a thing.'

"The accident or the fortuitous event happened at the time the respondent struck his eye upon the air compressor pipe. That was the event. The injury which was the result of that accident or event was when the effect was produced and the sight of the eye lost. The statute (section 7686, supra) requires that the claim be filed within one year from the day upon

which the 'injury' occurred. Prior to the time of the impairment of the sight, the respondent would not have been entitled to compensation under the Workmen's Compensation Act, as up to that time he had not in any substantial respect suffered damage."

And the award to the workman was affirmed.

To the same effect is the case of Hines v. Norwalk Lock Co., 100 Conn. 533, 124 Atl. 17. There the law in question barred compensation for a workman injured in industrial employment under Workmen's Compensation legislation unless claim was made for it within one year from the date of the injury. (Sec. 21 Pub. Acts, 1913). Said the court:

"There are other considerations which confirm our construction of 'injury' as used in these statutes. Under our Compensation Act 'the right to compensation depends in each case on the extent to which the plaintiff is in fact incapacitated.' Fair v. Hartford Rubber Works Co., 95 Conn. 350, 354, 111 Atl. 193. Compensation under our Act is based upon incapacity, total or partial, and hence is based upon loss of earning power. Wrenn v. Connecticut Brass Co., 96 Conn. 35, 37, 112 Atl. 638; Franko v. Schollhorn Co., 93 Conn. 13, 17, 104 Atl. 485. Since there can be no compensation unless there be incapacity, there would seem to be no reason for requiring a notice to an employer until such incapacity existed. To impose upon the employee the duty of giving notice forthwith after every accident to himself and before he had become incapacitated, would place an unreasonable burden on the employee. Probably most accidents to employees result in such slight injury as to be not compensable. Requiring notice of these would also place upon the employer an unnecessary burden of investigation and care. Placing such a duty upon the employee would turn the attention of the employee to the subject of compensation for every trifling injury, and this might result in a tendency to malingering. Since subsequent incapacity may result from an exceedingly slight wrench, bruise or scratch, the employee under the defendant's claim, in all cases, immediately upon the occurrence of the accident caus-

ing the slight injury, must give his employer notice or else risk having his award reduced if incapacity subsequently results. And the employer must investigate each of these cases and follow up the employee until all possibility of resulting incapacity shall have passed. We think it unreasonable to conclude that the General Assembly intended a construction such as this to be placed upon the word 'injury,' and especially so in view of its use of injury in § 5360 of the General Statutes, as amended by § 8 of Chapter 306 of the Public Acts of 1921, which we hold means resulting incapacity, or, as we phrase it in Esposito v. Marlin-Rockwell Corporation, 96 Conn. 414, 114 Atl. 92, compensable injury.

"In the case of an occupational disease arising in the course of his employment, the employee could not give such notice until incapacity had resulted. Injury is not used synonymously with accident in our Compensation Act."

While many additional authorities reaching like conclusions could be supplied, the opinions referred to above are replete with references thereto.

Finally, 71 C. J. 966-967 states that:

"Unless otherwise provided by the statute, the date of the injury and the date of the accident for the purpose of bringing suit are not necessarily the same. By injury is meant the state of facts which first entitles claimant to compensation, so that if the injury does not develop until after the accident, the cause of action arises when the injury develops or becomes apparent and not at the time of the accident, the latter having been held to be the rule in regard to latent injuries even where the statute requires the proceedings to be instituted within a specified time after the accident."

See also Acme Body Works, et al. v. Koepsel, 204 Wis. 493, 234 N. W. 756.

Remembering that, as we have frequently said in the past, the provisions of the Workmen's Compensation Act in this state should receive a liberal construction to accomplish the benevolent purpose for which

they were promulgated (Sakamoto v. Kemmerer Coal Co., 36 Wyo. 325, 255 Pac. 356; McConnell v. Murphy Bros., et al., 45 Wyo. 289, 18 Pac. (2d) 629; Koprowski v. Megeath Coal Co., 48 Wyo. 334, 45 Pac. (2d) 61) we consider it apparent under the reasoning of the foregoing authorities when applied to the statutory language here involved, that the term "injury" from the date of whose occurrence the mandatory time limitation imposed upon the employee to file his claim for compensation commences to run, means a compensable injury under the law. It is not used in the sense of "accident" for we find the phrase "accident * * * causing injury" employed in the very same section of the law (Sec. 124-112 W. R. S., 1931) as already noted, wherein the limitation just mentioned is incorporated. To say that the words are identical in meaning under such circumstances would be to do violence to the statute by disregarding its plain language. It is true that an accident frequently, perhaps usually, at the exact time of its happening produces a compensable injury, but as the cases cited above make clear that is not always so.

Medical science and diagnosis have advanced with well-nigh miraculous strides in the last decade or two, yet they cannot at this time, and probably never will be able to foretell accurately the reaction of every particular human body to every particular hurt it may sustain in industrial employment. Under these circumstances it seems to us palpably unjust to the employee to deny him compensation because he has tried to keep his place on the employer's pay roll by doing his regular work and then has found that conditions produced at the time of the accident, and which medical science could not recognize or whose final consequences it could not forecast, have gradually and ultimately produced a compensable injury. We do not think the

language employed in the law by our state legislature was reasonably intended to produce any such result.

We have referred to the fact that a compensable injury frequently occurs at the very time the accident happens, so it would appear proper that when the right to file a claim for compensation after the mandatory statutory period has elapsed following the accident of which complaint is made is insisted upon, it should become the clear duty of the trier of fact to determine upon proper and due preponderance of evidence the time when the employee actually suffered a compensable injury. Under the careful scrutiny applied by the trial courts to disputed questions of fact, justice will thereby be administered to employee and employer alike, and the legislative intent as to the operation of the statute will be accomplished.

In the case at bar, we think there is substantial evidence to support the finding of the trial court that Scullion's disability and compensable injury dated from the 17th day of January, 1935. At that time it became reasonably clear that he had suffered a fracture of the acetabulum and was temporarily totally disabled. Prior to that time the doctors appeared to have treated him for arthritis and rheumatism, and he continued practically all the time to pursue his employment. It is a fact that the medical men who gave testimony at the hearing of this matter disagreed in their interpretation as to what the several X-ray pictures of the claimant's pelvis disclosed, but Dr. Riach, Dr. Johnson and Dr. Orr all testified the pictures showed such a fracture, and Dr. McLellan, the employer's own physician, said in his direct testimony, relative to X-ray pictures, which he testified accurately showed the pelvis of the employee, (giving his language verbatim) :

"Q State to the Court what, if any, conditions are shown there that are not normal.

A. The conditions that are shown here that are not normal are the surfaces I described in the last view, taking in this area, (indicating) plus a small fragment chipped off the acetabulum crest on the right side, above the hip socket.

Q. Point out where that little fragment is.

A. Right here. (Indicating)"

We are necessarily obliged to conclude therefore that the employee's claim was filed within time.

It seems to be insisted by plaintiffs in error that because proof was submitted at the hearing that the Federal Rating Board of the Veterans' Administration rated Scullion as permanently partially disabled to the extent of twenty-five per cent, this fact should have conclusively affected the district court in its award in the instant case. We do not think so. Entirely aside from the admissibility of such evidence—a finding before another unrelated tribunal involving quite different matters from those at bar—both Dr. Riach and Dr. Johnson testified that Scullion was at the time of the hearing in this case totally disabled so far as performance of manual labor was concerned. Dr. Orr, whose deposition was taken March 7, 1936, stated that the last time he saw the employee, which was in November, 1935, in his opinion Scullion had a fifty per cent total disability. The evidence being in this condition the district court was authorized to make the finding and award it did as to temporary total disability.

Finding no error in the order questioned by these proceedings, it will be affirmed.

*Affirmed.*

KIMBALL, Ch. J., and BLUME, J., concur.