304 P.2d 1066

Walter E. HUGHES, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent, Insurance Carrier, and San Manuel Copper Corporation, Respondent Employer.

No. 6260.

Supreme Court of Arizona.

Dec. 18, 1956.

Lawrence Ollason, Tucson, for petitioner.

Guynn & Twitty, Phoenix, for respondent employer.

Robert K. Park, Phoenix, for respondent Industrial Commission of Arizona.

WINDES, Justice.

On September 12, 1955, Walter E. Hughes, petitioner herein, filed application with respondent Arizona Industrial Commission, for workmen's compensation. The commission denied compensation and we issued certiorari to review the award.

The commission made findings that on December 18, 1953, petitioner sustained a personal injury by accident arising out of and in the course of his employment; that the extent and seriousness of the injury became manifest to petitioner more than one year prior to the filing of his application for compensation; and that the commission therefore had no jurisdiction to award compensation. The only question presented is whether the commission is justified under the evidence in finding that the extent and seriousness of petitioner's injury

became manifest more than a year prior to the filing of the application for compensation.

The subsidiary facts which the commission could find to support its ultimate finding are substantially that on December 18, 1953, petitioner, while employed by respondent San Manuel Copper Corporation, in attempting to assist in stopping a loose flat car, struck his left hand resulting in some pain for a few seconds. He continued working and no report was made of the incident. Within about two weeks the second and third fingers of his left hand commenced to pain him. He consulted the company physician, Dr. Sellers, but did not report to him the happening of the accident. The doctor diagnosed the ailment as arthritis and prescribed treatment as a private patient. Not getting relief petitioner later consulted a chiropractor and went through a clinic in Mexico where he was also treated for arthritis. The trouble continued and in August and October of 1954 petitioner went to Dr. Vigil, then company physician, who took x-rays and, noting some abnormal condition in the wrist, referred petitioner to Dr. Tanz, an orthopedic physician in Tucson. Petitioner continued to work until October 11, 1954, when he reported to Dr. Tanz who took x-rays which, while the same did not reflect any fracture, did show such an abnormal condition in the wrist that in the opinion of the doctor exploration was indicated. He referred petitioner to the Veterans Administration Hospital for surgery. Petitioner did not report the incident of injuring his hand to Dr. Vigil but did report the same to Dr. Tanz. Surgery was performed in the Veterans Administration Hospital and the ailment there diagnosed "traumatic sinovitis, left wrist," as the source of the trouble. Petitioner did not learn of this diagnosis until October, 1954.

We are committed to the liberal rule that if an injury is slight or trivial at the time of accident and not compensable but later on there develop unexpected results for which the employee could not have been expected to make a claim, the statute of limitations runs from the time the injury becomes manifest and not from the date of the accident. Hartford Acc. & Indem. Co. v. Industrial Commission, 43 Ariz. 50, 29 P.2d 142. We have also said that an employee should not be deprived of compensation when in the exercise of reasonable care he is unable to make a correct diagnosis of his injury. English v. Industrial Commission, 73 Ariz. 86, 237 P.2d 815.

Initially, the petitioner was fully justified in considering the injury was not of a serious or compensable nature. Subsequently, when he experienced trouble, he sought medical advice from several sources, including the company doctors. In October, 1954, when the company doctor took

x-rays, he was advised for the first time by any physician that he was suffering from anything except arthritis, an ailment which of course could not be attributed to the accident. Except for the pain he was suffering and the knowledge of the original accident, he did not have any basis for thinking his ailment was caused by the accident and therefore compensable. Our view is that petitioner did everything that could be expected of any reasonable person in an effort to discover the cause of his ailment and until such discovery was made or in the exercise of reasonable care should have been made, there was, under the liberal interpretation of the Workmen's Compensation Act, no compensable injury upon which to found a claim for compensation. The earliest possible date when information was available that there was a possible relationship between the original accident and his ailment was in October, 1954 when the first x-rays were taken by the company doctor and he was referred to a specialist and the correct diagnosis made. There being no lack of diligence on the part of petitioner to learn the cause of his infirmity, it cannot be said that the compensability of his injury became manifest until a correct diagnosis disclosed that the injury was related to the accident. Baldwin v. Scullion, 50 Wyo. 508, 62 P.2d 531, 108 A.L.R. 304. It was manifest that he was having pain and difficulty from some source but until he in the exercise of reasonable diligence came in the possession of facts indicating the cause of the difficulty, it was not manifest that he had a compensable injury. From prior diagnoses, he was led to believe that he was suffering from arthritic rheumatism. It must appear manifest there was injury by accident.

■■ The petitioner continued his regular employment until October, 1954, and, of course, could not be allowed compensation under the provisions of section 56–961, A.C.A.1939 [A.R.S. § 23–1062], because he was not off work for a period of seven days. We do not wish to be understood as ruling that this alone would excuse petitioner from filing a compensation claim if in fact he received and discovered or should have discovered an injury that would otherwise be compensable. Even though he continued to work without decreased pay, notwithstanding he sustained an otherwise compensable injury, he would be obliged to file his claim within the required time and establish the compensability of his injury to be applied when and if there be a future change in earning capacity. We think the correct rule in this regard is stated in 2 Larson's Workmen's Compensation Law, section 78.51, as follows:

"When it is said that the compensation claim period should not begin to run until the claim itself is compensable, this does not mean that the claim period never runs until the oc-

currence of actual disability in the sense of quitting work, although dicta to this effect can be found. It has been shown in Chapter Ten that there can be compensability without discontinuance of work; an injured man, especially in time of labor shortage, may be able and may prefer to hold on to a job which pays perhaps several times as much as he could collect in workmen's compensation. This should not, however, excuse him from giving notice of the injury, nor from making a timely claim for compensation if he wants to claim compensation at all. In other words, he should not be allowed, with full knowledge of his compensation rights, to delay the employer's opportunity of investigating the injury indefinitely, for the purpose of clinging to his full-wage position as long as the labor market permits."

We feel the evidence does not warrant a finding that the extent and seriousness of petitioner's injury resulting from the accident of December 18, 1953, became manifest to him more than a year prior to September 12, 1955, when he filed his application for compensation.

The award is set aside.

LA PRADE, C. J., and UDALL, PHELPS and STRUCKMEYER, JJ., concur.