754 P.2d 1342

**Patrick E. HENRY, Petitioner Employee,**

v.

**INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**City of Phoenix, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. CV–87–0249–PR.**

Supreme Court of Arizona, In Banc.

April 7, 1988.

Reconsideration Denied June 21, 1988.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears by Lawrence H. Lieberman, Phoenix, for petitioner employee.

Dennis P. Kavanaugh, Chief Counsel, Phoenix, for respondent.

Robert K. Park, Peter C. Kilgard, Phoenix, for respondent employer/carrier.

CAMERON, Justice.

### I. JURISDICTION

Patrick Henry (claimant) seeks review of a memorandum decision of the court of appeals which affirmed an Industrial Commission's (Commission) finding that it lacked jurisdiction to hear the claim. We have jurisdiction pursuant to Ariz. Const., art. 6 § 5(3) and A.R.S. § 23–948.

### II. QUESTION

We need answer only one question on review and that is:

Was the claim for Workers' Compensation benefits timely filed pursuant to A.R.S. § 23–1061(A)? [1]

### III. FACTS

The facts necessary for a determination of this matter on review are as follows:

Following service in the military, claimant joined the Phoenix police department (Employer) on 16 January 1958. He was 21 years old at the time and had not been in combat while in the military. His father had been a police officer and a police chief, and claimant was described as being highly-motivated and desirous (and capable) of a similar career path.

During his first few years with the Phoenix police department, claimant excelled as a police officer and received a number of

---

1. The court of appeals also held that the doctrine of equitable estoppel did not apply. Because we have disposed of the matter on the timeliness of the filing we need not consider the question of estoppel.

commendations for his work. There were no signs of emotional problems, mental illness or excessive use of alcohol.

On 21 March 1960, claimant and a partner stopped an automobile containing two males in "Paris Alley" (Second Street between Washington and Jefferson Streets in downtown Phoenix). This being before two-way radios, claimant's partner went to call in to see if the men were wanted. After he left, a call came in over the car radio that there had been an armed robbery nearby. Believing the men to be the robbers, claimant approached the car. By that time one of the suspects had crawled into the back seat. As claimant arrived at the car, the suspect took a pistol out of a paper bag and stuck it in claimant's face. A struggle ensued. Each man had two hands on the pistol, but claimant could not prevent the barrel from being pointed at his nose. The suspect started to pull the trigger and claimant watched the cylinder begin to rotate. As he described it, "I was going like that struggling for the gun and I couldn't get it out of my nose and the cylinder started to turn. As the cylinder started to turn, I thought I saw an orange flash and my whole face went, but it didn't. It didn't...." The gun had apparently misfired.

After this incident, claimant was able to wound one of the suspects and place handcuffs on the other. After the ambulance came and left, and after the detectives who had arrived to question the claimant had also departed, claimant for the first time in his life " 'broke down and ... started crying and getting hysterical.' " He missed no work following the incident and received no medical care.

Some four to six weeks later, claimant began to overreact to loud noises, became nervous and jumpy, experienced difficulty sleeping, and began to consume alcohol to excess, including hard liquor. This was in contrast to his former pattern of drinking an occasional beer. He became the object of station-house jokes because of his physical reaction to loud noises.

Sometime in 1960 or 1961, claimant and one of his close friends on the police force went on a hunting trip in southern Arizona. During this trip claimant suffered a serious mental breakdown, requiring the aid of two Pima County Sheriff's deputies to restrain and hospitalize him. A report was not filed on the incident. When claimant got back to Phoenix, claimant's father convinced the friend not to talk further about the incident.

In 1962 or 1963, claimant sought help from the Phoenix police department doctor for his jumpiness and nervousness. The doctor told claimant, " 'You've got war nerves. Keep your mouth shut. I won't tell your captain or you'll get fired.' "

Claimant's drinking continued to increase and in August of 1965, after an alcohol-related incident, he was forced to resign from the Phoenix police department. Subsequently, he worked at a number of jobs, none of them lasting for a long period of time. He experienced frequent arrests and hospitalizations for chronic alcoholism, and in 1970 he suffered a mental breakdown.

In January of 1984, claimant came under the care of Dr. Carl Smith, Ph.D., a therapist at the Veterans Hospital in San Diego. In his deposition, Dr. Smith testified that claimant's previous diagnosis had always been alcohol abuse, but that in approximately August or October of 1984 he had diagnosed claimant's condition as "post-traumatic stress syndrome with a secondary diagnosis of alcohol abuse and depression." Dr. Smith explained that the Vietnam War had caused more research and a better understanding of "post-traumatic stress syndrome", and that patients with this diagnosis often turn to alcohol as a form of self-medication. He further testified that claimant probably had not associated his alcoholism with the "Paris Alley incident." Dr. Smith added, however, that he traced claimant's disorders back to the 1960 incident by placing claimant under hypnosis. Additionally, the expert retained by the State Compensation Fund (Fund) testified that prior to 1980 the relationship between traumatic neurosis and alcoholism did not appear to be recorded in psychiatric literature.

In December of 1984, claimant returned to Phoenix, retained counsel, and filed a workers' compensation claim for the injury allegedly sustained in March of 1960, more than 24 years earlier. His claim was filed for a condition termed "post-traumatic stress syndrome" which in turn caused substance abuse, a symptom of the syndrome. The Fund denied the claim and a series of hearings were held. Although conflicting medical opinions were offered that would also have a bearing on the merits of the causation of the claim, both sides agreed that the issue at the hearings was whether the Commission had jurisdiction to consider the claim, based upon the statute of limitations. The administrative law judge (ALJ) held that the Commission had no jurisdiction.[2]

The ALJ specifically found:

It was apparent from the applicant's testimony that the applicant was aware of and knew that he was "nervous" and "was jumpy" as early as " '62 or '63" when he sought care and treatment from a city doctor and that he knew such conditions had their genesis in his employment not only because he related a history to the doctor of the Paris Alley incident but also because he stated the doctor told him at that time his "... war nerves were probably related to this Paris Alley incident."

As a result, the ALJ found that the claim should have been filed within one year of the Paris Alley incident, and not 24 years later when the claim was actually filed.

The denial of jurisdiction was affirmed on administrative review and by the court of appeals. Claimant petitioned this court for review, and we granted the petition.

## IV. DISCUSSION

Claimant contends that the Commission had the authority at the time the claim was filed to issue an award. The relevant statute reads:

Notwithstanding the provisions of subsection D of § 23–908, no claim for compensation shall be valid or enforceable unless the claim is filed with the commission by the employee ... in writing within one year after the injury occurred or the right thereto accrued. The time for filing a compensation claim begins to run when the injury becomes manifest or when the claimant knows or in the exercise of reasonable diligence should know that he has sustained a compensable injury.

A.R.S. § 23–1061(A).

As we have noted, "the time for filing a workers' compensation claim begins to run when the injured employee perceives the nature and seriousness of the injury and recognizes the causal relationship between his injury and his employment." *Pacific Fruit Express v. Industrial Comm'n*, 153 Ariz. 210, 214, 735 P.2d 820, 824 (1987).

Likewise, we have held that if the injury is not compensable at the time of the injury, but later on there develops unexpected results for which the claimant could not have been expected to make a claim, the statute of limitations to file that claim runs from the time the injury becomes manifest and not from the date of the accident. *Hughes v. Industrial Comm'n*, 81 Ariz. 264, 266, 304 P.2d 1066, 1067 (1956).

In the instant case, while it may be true that the claimant knew something was wrong at the time he consulted with the Phoenix police department doctor following the 21 March 1960 incident, the work-related injury or condition for which a claim is now made, post-traumatic stress syndrome, was not diagnosed as a treatable explanation for claimant's condition until some 24 years later. The fact that claimant sought medical care for his nervousness or jumpi-

---

2. The court of appeals has noted regarding the word jurisdiction: "Although the legislature used the word 'jurisdiction', the word jurisdiction is often used ambiguously. We believe that the legislature meant jurisdiction in the sense of authority to grant relief. The one year limitation period is clearly not jurisdictional in the strict sense in light of subsection (D), which has been repeatedly interpreted by the courts as making timeliness an affirmative defense." *Allen v. Industrial Comm'n*, 152 Ariz. 403, 404 n. 2, 733 P.2d 288, 289 n. 2 (App.1986). (citations omitted). We agree. *Allen v. Industrial Comm'n*, 152 Ariz. 405, 412, 733 P.2d 290, 297 (1987).

ness as early as 1962 may indicate his knowledge of a problem, but not knowledge of a medical condition unknown at the time of the injury. We refuse to hold a claimant to the knowledge that his job had caused a serious medical condition based on post-traumatic stress syndrome when the condition was not diagnosable at the time he first sought treatment. *Villegas v. Industrial Comm'n*, 149 Ariz. 382, 384, 718 P.2d 1035, 1037 (App.1986).

As we have stated:

In our opinion, the Arizona Workmen's Compensation Law does not place upon the employee the duty of knowing the nature of his disability and its relation to his employment before these things are reasonably ascertainable by the medical profession.

*Mead v. American Smelting & Refining Company*, 1 Ariz.App. 73, 77, 399 P.2d 694, 698 (1965). See also the recent case of *Borough of Norwood v. Workmen's Compensation Appeal Board (Wiker)*, 114 Pa. Cmwlth. 157, 538 A.2d 143 (1988).

We believe the claim was timely filed. We make no determination on the merits of the claim.

### V. HOLDING

Opinion of the court of appeals vacated. Award set aside.

GORDON, C.J., FELDMAN, V.C.J., and MOELLER, J., concur.

HOLOHAN, Justice, dissenting.

The legal principles applicable to this case were set forth in *Pacific Fruit Express v. Industrial Commission*, 153 Ariz. 210, 735 P.2d 820 (1987). The administrative law judge recognized and applied those principles to the facts. The Court of Appeals carefully considered this case and applied the same legal principles as this court. I agree with the conclusion of the Court of Appeals and dissent from the disposition made by this court.

*Pacific Fruit Express* held that: (1) The determination when the alleged injury became manifest or when the claimant knew or in the exercise of reasonable diligence

should have known that he had sustained a compensable injury is a fact determination which the Industrial Commission has the exclusive power to make. (2) This court's review is limited to determining whether there is evidence in the record to support the finding of the Commission. (3) This court does not weigh the evidence but considers it in the light most favorable to sustaining the award. The evidence in the record should be reviewed with the foregoing principles in mind.

In addition to the evidence set out in the majority opinion, the record shows that the claimant admitted that the reason he went to the doctor employed by the City in 1962 or 1963 was to receive treatment for his nervous condition, and he realized that the condition was caused by the incident in his employment because he related that incident as part of the history he gave to the doctor.

The record shows that the claimant knew how to file a report of injury with the Commission because he did so on at least three occasions. It is apparent that the reason he did not pursue his nervous condition was his concern for his job future and not because of any lack of understanding about the connection of his mental condition to the 1960 incident.

After the termination of the claimant's employment with the City in 1965 there was no longer any reason for him to fail to pursue his remedy with the Commission, but the claimant did not file a claim.

Over the intervening years the record shows that in seeking treatment the claimant has related his current condition as beginning with the 1960 incident. The difficulty has not been that the claimant has recently discovered that his condition is related to the job incident, but he has only since 1984 been able to convince an expert that his condition was actually caused by the 1960 incident. The opinion of the claimant's expert is not shared by other treating physicians. The diagnosis of "post traumatic stress disorder" by claimant's expert was rejected by the carrier's expert. The merits of the medical diagnosis is now a matter which must be deter-

mined when the claim is heard on the merits. It is worthy of note, however, that the claimant has consistently believed his problems began with the 1960 job incident, yet he never filed for compensation until 1984.

If in fact the claimant's present condition is due to the job incident, the long delay in failing to file a claim has aggravated the condition when prompt action might well have resulted in effective treatment. The claimant's inaction has exacerbated the condition and increased expense for medical care. It was to avoid such results that the statute mandated prompt filing of claims.

The record supports the conclusion of the administrative law judge that the claimant knew, as early as 1962, that his mental condition was the result of the job incident in 1960, but he did not file a claim. The 1984 filing was not timely, and the ruling that the Commission was without jurisdiction should have been affirmed.