IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

BENJAMIN PITTS, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

CITY OF CHANDLER, *Respondent Employer*,

CORVEL ENTERPRISE CORP. INC., *Respondent Carrier.*

No. 1 CA-IC 18-0005
FILED 3-21-2019

---

Special Action - Industrial Commission

ICA Claim No.  20163-060226
Carrier Claim No. CN-13-005314
The Honorable Layna Taylor, Administrative Law Judge

**AWARD SET ASIDE**

---

COUNSEL

Law Offices of Robert E. Wisniewski, Phoenix
By Robert E. Wisniewski
*Counsel for Petitioner*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent, ICA*

Jones, Skelton & Hochuli, PLC, Phoenix
By Gregory L. Folger, Sean M. Moore
*Counsel for Respondents Employer and Carrier*

## OPINION

Presiding Judge Jennifer B. Campbell delivered the opinion of the Court, in which Judge Paul J. McMurdie and Judge Kent E. Cattani joined.

C A M P B E L L, Judge:

¶1 This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review of Benjamin Pitts' workers' compensation claim. The sole issue presented on appeal is whether Pitts' claim for workers' compensation benefits, based on post-traumatic stress disorder ("PTSD"), was untimely under Arizona Revised Statutes ("A.R.S.") section 23-1061(A). Because insufficient evidence supported the ALJ's finding of untimeliness, we set aside the award.

## BACKGROUND

¶2 Pitts worked for the City of Chandler as a police officer between July 2002 and April 2017. In May 2013, Pitts was on duty in his patrol vehicle with his fiancée, who was participating in a ride-along. That evening, Pitts received a service call. Dispatch explained there was a man acting in a disorderly manner and possibly brandishing a gun outside Chandler Regional Hospital. The dispatcher told Pitts the man was walking up the road with hospital security guards following at a distance. Upon arriving in his patrol car, Pitts directed his spotlight at a man fitting the suspect's description. The man then stopped, leveled his gun, and fired. The first bullet shattered the windshield, spraying glass toward Pitts' face and eyes. As multiple bullets continued to pelt the car, Pitts got out and returned fire. Pitts shot the man in the shoulder, ending the gunfight. Neither Pitts nor his fiancée were injured by the spray of bullets.

¶3 Pitts took three weeks off work after the incident. A week or two into his leave, his superiors required him to see the police department psychologist, who advised Pitts to "get back on that horse." Although Pitts told the department psychologist he felt unready to work, he resumed his duties a week later. The department psychologist did not provide a diagnosis at that time, and Pitts did not seek or receive any additional treatment related to the shooting incident.

**¶4** Almost a year later, the man went on trial for shooting at Pitts. Pitts attended the three-week trial daily and testified about the events of that evening. The shooter was convicted and sentenced to over 50 years in prison.

**¶5** Between the shooting incident and the trial, Pitts experienced emotional problems, including difficulty sleeping and nightmares, anxiety, and social withdrawal. Pitts also became hypervigilant—constantly assessing potential threats to his safety and that of his family. A year after the trial, the shooter's sentence was reduced. Pitts testified at the hearing that the sentence reduction was a "gut punch." In his opinion, the reduction in sentence was based solely on a legal technicality. Over the next six months, Pitts' depression worsened: he lost interest in his children and home life, began having panic and anxiety attacks at work, and experienced tunnel vision, insomnia, dissociative episodes where he lost track of time, and a hollow echoing sound in his ears.

**¶6** On December 28, 2015, Pitts visited his primary care doctor to obtain sleep medication. The doctor's note from that visit states, "[p]robable PTSD," and opined that Pitts needed to see a psychologist for evaluation. In the ICA proceeding that eventually followed, Pitts testified he did not recall the doctor mentioning the need for psychological treatment.

**¶7** At the recommendation of fellow officers, Pitts saw a trauma psychologist in January 2016. This was the first time a medical professional diagnosed him with dissociative complex PTSD related to the shooting incident. Based on this medical assessment, he was taken off patrol duty. The trauma psychologist's treatment summary shows that his initial visit occurred on January 21, 2016, with a diagnosis that day or soon thereafter.

**¶8** Shortly before seeing the trauma psychologist, Pitts made an injury report to Corvel Enterprise Corp., Inc. (the "Carrier"). It was not until the Carrier refused to pay his medical bills that Pitts decided to pursue a workers' compensation claim. On October 27, 2016, he filed a worker's report of injury for PTSD stemming from the shooting incident. The Carrier again denied his claim for benefits, and he timely requested an ICA hearing. The ALJ held a hearing, limited to the issue of timeliness, and heard testimony from Pitts and his fiancée.

**¶9** Pitts' fiancée testified that she had lived with Pitts since the incident and witnessed the May 2013 shooting. She explained that sometime in July 2015, Pitts began to disassociate, hide in his room, and stop communicating, doing chores, or getting dressed for the day. He

appeared depressed and quit interacting with his children. His fiancée testified that Pitts became hypervigilant about his family's safety.

¶10      Following the hearing, the ALJ determined Pitts' claim was untimely and that the ICA thus lacked jurisdiction. Pitts timely requested administrative review, and the ALJ supplemented and affirmed the decision. Pitts next brought this special action.

## DISCUSSION

¶11      Pitts asserts that the ALJ erred in finding his claim untimely, arguing that he did not know of his condition until early 2016 when he was diagnosed with PTSD and began treatment. The City and the Carrier respond that the ALJ correctly concluded that Pitts knew both the nature and seriousness of his injury within one year of the incident. Because neither the City nor the Carrier presented adequate evidence to support a finding that the claim was untimely, we set aside the award.

¶12      A workers' compensation claim must be filed "within one year after the injury occurred or the right thereto accrued." A.R.S. § 23-1061(A). A compensable injury becomes manifest—and the one-year period begins to run—when the injured employee recognizes the nature of his injury, the seriousness of the injury, and the probable causal relationship between the injury and the employment. *Pac. Fruit Express v. Indus. Comm'n*, 153 Ariz. 210, 214 (1987). The ALJ considers these factors together to determine "when the claimant knew or should have known that he sustained a compensable injury." *Id.*; *see* A.R.S. § 23-1061(A). This rule allows compensation for an injury that manifests and becomes compensable sometime after the triggering event. *See Henry v. Indus. Comm'n*, 157 Ariz. 67, 70 (1988) (holding that a claim filed by a police officer 24 years after a traumatic incident was timely when "the condition [of PTSD] was not diagnosable at the time [the claimant] first sought treatment").

¶13      The party opposing the claim based on timeliness of filing under A.R.S. § 23-1061(A) must raise the issue as an affirmative defense. *Allen v. Indus. Comm'n*, 152 Ariz. 405, 412 (1987) ("The one-year filing requirement is in the nature of an affirmative defense and will be deemed waived unless timely asserted."); *see* Ariz. R. Civ. P. 8(d)(1)(P). That party then bears the burden of production of evidence to support the affirmative defense. *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 119, ¶ 26 (App. 2008); *see Hughes Aircraft Co. v. Indus. Comm'n*, 125 Ariz. 1, 4 (App. 1979) ("While the Rules of Civil Procedure do not apply to Industrial Commission

proceedings, the rationale [therein] .. . . [is] equally applicable to both proceedings . . . ."). In this instance, the City and the Carrier were responsible for producing sufficient evidence to support a determination of when the injury manifest to the degree that it became a compensable injury, which would trigger the running of the one-year statute of limitations.

¶14        As the trier of fact, the ALJ reviews the evidence presented to determine when a compensable injury manifests and the statute of limitations begins to run. *Pac. Fruit Express*, 153 Ariz. at 214.  On appeal, this court limits its review to whether the record supports the ALJ's finding. *Id.* We will affirm so long as reasonable evidence supports the award, viewing the record in the light most favorable to the ALJ's decision. *Delgado v. Indus. Comm'n*, 183 Ariz. 129, 131 (App. 1994). Here, the ALJ found that Pitts' claim was untimely based solely on testimony from Pitts and his fiancée. The ALJ's conclusion, in relevant part, read as follows:

> Here . . . the applicant knew, in the year following the shooting incident that he was missing more time from work than previously, for reasons related to the shooting. He had constant difficulty sleeping, nightmares, emotional instability and social withdrawal throughout the first year following the incident. Those symptoms only increased over the next eighteen months, which finally led the applicant to see his primary care doctor in December 2015 to get sleep medication. While he may not have known what was happening to him . . . he did not seek medical or psychological help with his symptoms between June, 2013, and December, 2015, though there is no evidence that he was prevented from doing so. . . . Based on all the foregoing, it is found that the applicant's claim was untimely filed . . . .

¶15        In contrast to many physical injuries where a diagnosis is immediate and obvious, the emergence of a mental health injury is difficult to pinpoint. *See City of Glendale v. Indus. Comm'n*, 1 CA-IC 17-0049, 2018 WL 2676431, at *3, ¶ 17 (Ariz. App. June 5, 2018) (mem. decision) ("[A testifying doctor] stated that she reached a 'tentative' diagnosis of PTSD at her first appointment with the claimant . . . [but likely did not immediately] share[] her diagnosis with the claimant . . . because she needed to gather and verify his symptoms."). The *Diagnostic and Statistical Manual of Mental Disorders* ("*DSM-5*"), included in the hearing file and cited in Pitts' psychological reports, sets forth a complex diagnosis scheme for PTSD, noting that "[t]he essential feature of [PTSD] is the development of characteristic symptoms

following exposure to one or more traumatic events." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 274 (5th ed. 2013).

¶16        Characteristic symptoms of PTSD after exposure to a traumatic event are defined in the *DSM-5* and include the presence of the following: "intrusion symptoms" such as recurrent distressing dreams or memories or prolonged psychological distress after exposure to stimuli related to the traumatic event; persistent avoidance of stimuli associated with the event, such as internal or external reminders; negative alterations in cognition and mood, such as memory loss of the event, lowered self-esteem, or detachment from others; marked alterations in personality; clinically significant impairment in important areas of functioning; and that any of these characteristic disturbances exceed one month and are not attributable to any other cause. *Id.* at 271-72.

¶17        While PTSD is a specific diagnosis with characteristic symptoms, the *DSM-5* instructs that the presentation of symptoms varies widely:

> In some individuals, fear-based re-experiencing, emotional, and behavioral symptoms may predominate. In others, anhedonic or dysphoric mood states and negative conditions may be most distressing. In some other individuals, arousal and reactive-externalizing symptoms are prominent, while in others, dissociative symptoms predominate. Finally, some individuals exhibit combinations of these symptom patterns.

*Id.* at 274.

¶18        To complicate the issue further, the concept of "delayed expression" recognizes that while some symptoms immediately appear, there may be a delay—spanning months or even years—in meeting full criteria for a PTSD diagnosis. *Id.* at 276; *Howe v. Indus. Comm'n*, 1 CA-IC 17-0002, 2018 WL 1004292, at *3, ¶ 15 (Ariz. App. Feb. 22, 2018) (mem. decision) ("DSM-5 includes a diagnosis for delayed PTSD in which symptoms do not manifest for at least six months after the traumatic event."). *See Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 96, 99 (Tenn. 1993) (discussing a workers' compensation suit where a psychiatrist reported that the claimant's PTSD symptoms were "subtle in onset"). With these considerations in mind, fact-intensive medical determinations are especially important when ruling on the timeliness of a workers' compensation claim involving PTSD. *See Brunell v. Wildwood Crest Police Dep't*, 822 A.2d 576, 599-600 (N.J. 2003).

¶19        In this case, the record shows that Pitts experienced a traumatic incident. He then developed symptoms that increased in nature and severity over a period of years. Pitts was not diagnosed with PTSD, however, until January 2016, and the Carrier did not present evidence to show that his symptoms had become acute enough to allow a diagnosis of PTSD before that time.

¶20        Despite the complex nature of a PTSD diagnosis, neither the City nor the Carrier offered the necessary evidence to allow the ALJ to resolve when the injury became compensable or when Pitts knew or should have known that his injury had become acute enough to constitute a compensable claim. While the ALJ found that Pitts understood he missed work "for reasons related to the shooting" immediately following the incident, no evidence of record supports a finding that he knew or should have known of his condition at the time of the shooting or at any specific time thereafter when he began to avoid work. Pitts concedes he did not seek medical or psychological help with his symptoms in the years immediately following the shooting. However, neither the City nor the Carrier—who bear the burden of production in their affirmative defense—presented evidence to identify at what point in time Pitts' condition required him to do so. *Cf. Pac. Fruit Express*, 153 Ariz. at 212-13 (affirming a finding of timeliness when the ALJ identified the precise medical test after which the claimant knew or should have known his hearing loss was a compensable injury).

¶21        Furthermore, the record does not indicate a point (other than the date Pitts was diagnosed as having PTSD) at which Pitts' symptoms had progressed to the point that a diagnosis would have been possible. Due to the complex nature of a PTSD diagnosis, expert testimony is generally required to assess when such a diagnosis could have been made. *See Tronsen v. Indus. Comm'n*, 18 Ariz. App. 149, 150 (1972) (noting that when the answer to a question of fact is within the purview of medical experts, an ALJ must generally rely on testimony from such experts); *Cash v. Indus. Comm'n*, 27 Ariz. App. 526, 532 (1976). Here, the sole witnesses at the administrative hearing were Pitts and his fiancée. No expert testimony was presented to support the conclusion that Pitts could have been diagnosed earlier than January 2016 or whether someone with PTSD would be more or less likely to understand the severity of the symptoms and seek treatment for the condition.

¶22        The City and the Carrier failed to meet their burden of proving the claim untimely. They submitted no competent evidence to allow the ALJ to ascertain when Pitts' claim became compensable and when

he knew or should have known it had become compensable, as required to identify the date on which the clock on the one-year limitation began to run. On this record, the ALJ's finding of untimeliness was not supported by the record and Pitts was entitled to a hearing on the merits.

## CONCLUSION

¶23        For the foregoing reasons, we set aside the ALJ's award.



AMY M. WOOD • Clerk of the Court
FILED:   AA