443 P.2d 449

**Rose MOFFORD, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona and State of Arizona–State Auditor, (Arizona State Secretary Department), Respondents.**

**No. 1 CA–IC 175.**

Court of Appeals of Arizona.

July 8, 1968.

Review Denied Sept. 26, 1968.

er grounds by the Ninth Circuit Court of Appeals. 187 F.2d 860 (1951), cert. denied 342 U.S. 859, 72 S.Ct. 85, 96 L.Ed. 646 (1951).

Morgan & Jerome, by Donald J. Morgan, Phoenix, for petitioner.

Robert D. Steckner, Chief Counsel, by Arthur B. Parsons, Phoenix, for respondent Industrial Commission.

STEVENS, Judge.

The petitioner, the Assistant Secretary of State of the State of Arizona, was on official business in Prescott on 11 May 1963. While attending a meeting in a hotel dining room a large staff bearing a flag fell and struck her on the neck and head. Her claim was not filed with The Industrial Commission until 1 December 1966 at which time she executed an election to take compensation. On 5 August 1963 the petitioner executed a release of all claims against the hotel. The recited consideration was $10.00. An insurance company draft, in the sum of $10.00 payable to the petitioner and to the doctor who treated her on 11 May 1963, was endorsed by her and surrendered to the doctor in payment of the doctor's claim for professional services rendered.

The petitioner urges that she filed her claim within a year after her "right thereto accrued". The Industrial Commission urges, as its main points denying compensation, that:

1. The release which the petitioner executed bars her right to Industrial Commission compensation;

2. The statute of limitations has run barring any possible claim against the hotel thereby defeating the Industrial Commission's subrogation rights against the hotel as a third party tort feasor; and

3. Petitioner was aware of the trauma on 11 May 1963 and her right to file a claim expired one year after that date.

A.R.S. § 23–1061, subsec. D is as follows:

"D. No application for compensation shall be valid or claim thereunder enforceable unless filed within one year after the day upon which the injury occurred or *the right thereto accrued.*" (emphasis supplied)

A.R.S. § 23–1023 and § 23–1024 relate to the right of an injured employee to elect to sue the third party tort feasor and the right of the employee to take compensation. In the event of the election to sue, the claim may not be compromised without the written approval of The Industrial Commission and in the event of the election to take compensation the Industrial Commission is subrogated to the rights of the injured employee.

Upon the happening of the event on 11 May 1963 the petitioner was momentarily stunned. A doctor was called to attend her, not by the petitioner, but apparently by the hotel. The doctor made a brief examination and advised her that she could expect headaches, prescribing aspirin. Petitioner received no further medical attention for some time following the accident. Upon her return to Phoenix she consulted with the Secretary of State. Neither the petitioner nor the Secretary of State felt that the incident was of sufficient magnitude to warrant a report to or a claim with The Industrial Commission. The hotel maintained a public liability policy which policy did not contain medical pay provisions. The doctor insisted that the petitioner pay for the services which he had rendered. This she was reluctant to do, believing that the obligation was that of the hotel. The petitioner did not seek out the insurance company, the insurance com-

pany sought her. The insurance company presented her with an all inclusive release form which she eventually signed thereafter receiving and endorsing the $10.00 check of which she retained no portion.

The petitioner experienced some headaches which she did not relate to the accident. She lost no time from her employment. In July 1965 she volunteered to donate blood and was informed that she was anemic. Her husband had been treated by a Phoenix cardiologist and the petitioner consulted him, believing that she might also have a heart condition. She related the 11 May 1963 incident to the doctor who put it aside believing that there was no causal relationship between the incident and her pronounced anemia. The petitioner had been using an excessive amount of salicylates, these being in the form of aspirin and anacin. The record discloses that thereafter the petitioner underwent surgery which is not related to the incident in question.

In the fall of 1966 the petitioner experienced a disabling shoulder condition which she believed to be bursitis. On 17 October 1966 she consulted an orthopedic surgeon at which time she made no mention of the 1963 trauma. This doctor believed her trouble to be a nerve root problem. The petitioner was hospitalized and a neurological surgeon was called on consultation. The latter doctor performed surgery on the petitioner's neck on 11 November 1966, finding a swollen nerve root at C 6–7 which condition was corrected by surgery. Thereafter the neurological surgeon conferred with the petitioner in relation to the cause of her problem and the petitioner related the 1963 incident. In a report filed with The Industrial Commission this doctor stated in part:

"X-rays reveal no evidence of cervical spine injury but in the absence of any other injury to her neck one must assume that the flagpole incident and her present symptomatology are related."

Upon receiving this advice the claim in question was filed.

The claim was processed in the usual manner without a formal administrative hearing. By an award dated 9 February 1967 the claim was held to be noncompensable. We quote Findings 5 and 6:

"5. That the claim has not been timely filed pursuant to A.R.S., Section 23–1061; and the applicant's earlier release of the third party tortfeasor, and the subsequent passage of the statutory time for bringing action against said tortfeasor, are prejudicial to this Commission.

"6. That the applicant admittedly suffered residual effects from the accident in the year succeeding the accident, and that from such manifestations, the applicant either knew, or in the exercise of reasonable diligence should have known, that she had sustained an injury that was more than trivial and sufficiently serious to warrant further medical attention, and that she failed to apply for compensation benefits within a year of said manifestation."

An award recited in part:

"IT IS ORDERED that said applicant's claim is hereby denied on the grounds this Commission has no jurisdiction in the premises."

Thereafter the petitioner made a timely request for a formal hearing which was granted. Testimony was received. The Commission reaffirmed its lack of jurisdiction without hearing the testimony of the neurosurgeon and without passing on the merits of the claim. The matter was brought to this Court for review by certiorari. In view of the absence of an Industrial Commission determination as to whether there was a causal relationship between the 11 May 1963 incident and the nerve root problem discovered and corrected by the 11 November 1966 surgery, this Court expressly refrains from expressing an opinion on this potential issue.

## THE RELEASE

In view of the fact that the two-year statute of limitations with reference to tort claims would preclude an action against the hotel, this Court is at liberty to decide the issue relative to the release. All parties who could be affected by this phase of our decision are before the Court.

■ The petitioner did not seek out the hotel or its insurance carrier. At the time of the release no one knew of the seriousness of the injury. The petitioner had not engaged the services of the doctor and was not obligated to pay for those services. The doctor received the entire "consideration" paid for the execution of the release. The petitioner was then a married woman and her husband did not join in the release. When the release is tested by the rules set forth in Dansby v. Buck, 92 Ariz. 1, 373 P.2d 1 (1962), the release fails.

## STATUTE OF LIMITATIONS

■ The Industrial Commission urges that it was prejudiced in its right to be subrogated to the petitioner's claim against the hotel because she did not present her claim to The Industrial Commission until more than two years had expired following the 11 May 1963 incident. The test as to whether the claim was timely filed is not governed by the two-year tort statute of limitations. Let us assume that two workmen sustained similar injuries, one wherein there was no possibility of a third party claim, and the other under circumstances where there was a valid third party claim. Let us further assume that their time to file a claim with The Industrial Commission under the provisions of A.R.S. § 23–1061, subsec. D did not mature for three years. It would be unrealistic to award compensation to the first while denying compensation to the second because of the running of the two-year tort statute.

## WHEN DID THE RIGHT TO FILE ACCRUE?

■ We come now to the vital portion of this case. The phrase "the right thereto accrued" contained in A.R.S. § 23–1061, subsec. D is the vital and controlling statutory provision. It is well established in this state that each case stands upon its own peculiar facts. The fact that an employee was aware of a trauma on the date in question is not controlling. One of the early important cases in this connection is Hartford Accident & Indemnity Company v. Industrial Commission, 43 Ariz. 50, 29 P.2d 142 (1934). In this case the injured employee received a blow in the mouth which was sustained when an engine backfired and he was struck by the crank. Certainly he was aware of the trauma at that time. He received medical attention. More than two years expired before the claim was filed and compensation was granted. The test applied was stated by the Arizona Supreme Court (43 Ariz. 55, 29 P.2d) as follows:

"* * * (i)f it is slight or trivial at the time and noncompensable and later on develops unexpected results for which the employee could not have been expected to make a claim and receive compensation, then the statute runs, not from the date of the accident, but from the date the results of the injury became manifest and compensable. * * *"

Another trauma case is Hughes v. Industrial Commission of Arizona, 81 Ariz. 264, 304 P.2d 1066 (1956). In connection with HUGHES the employee sustained an industrial incident on 18 December 1953, which resulted in some pain. In October 1954 he learned for the first time that the cause of his disability was not arthritis, but was traumatic in origin. Proper claim was filed on 12 September 1955. The Arizona Supreme Court stated: (81 Ariz. 266, 304 P.2d)

"* * * We have also said that an employee should not be deprived of compensation when in the exercise of reasonable care he is unable to make a correct diagnosis of his injury. English v. Industrial Commission, 73 Ariz. 86, 237 P.2d 815.

"Initially, the petitioner was fully justified in considering the injury was not of a serious or compensable nature. Subsequently, when he experienced trouble, he sought medical advice from several sources, including the company doctors. In October, 1954, when the company doctor took x-rays, he was advised for the first time by any physician that he was suffering from anything except arthritis, an ailment which of course could not be attributed to the accident. *Except for the pain he was suffering and the knowledge of the original accident, he did not have any basis for thinking his ailment was caused by the accident and therefore compensable.* Our view is that petitioner did everything that could be expected of any reasonable person in an effort to discover the cause of his ailment and until such discovery was made or in the exercise of reasonable care should have been made, there was, under the liberal interpretation of the Workmen's Compensation Act, no compensable injury upon which to found a claim for compensation. The earliest possible date when information was available that there was a possible relationship between the original accident and his ailment was in October, 1954 when the first x-rays were taken by the company doctor and he was referred to a specialist and the correct diagnosis made. There being no lack of diligence on the part of petitioner to learn the cause of his infirmity, *it cannot be said that the compensability of his injury became manifest until a correct diagnosis disclosed that the injury was related to the accident.* * * *" (Emphasis supplied.)

The case of Martin v. Industrial Commission, 88 Ariz. 14, 352 P.2d 352 (1960) is another example of a trauma induced situation. The worker was struck on the back of the head and the neck by a plank on 29 November 1942. His claim was a proper claim even though not filed until 3 October 1958.

In discussing these principles this Court stated in Williams v. Industrial Commission, 3 Ariz.App. 403, 415 P.2d 118 (1966):

"* * * The claim in the instant case was not filed within a year after the day upon which the accident occurred. We are concerned, then, with when the right to compensation accrued. This phrase has been interpreted by our case law to mean that the time for filing a claim starts to run, '* * * when the injury becomes manifest or when claimant knows or in exercise of reasonable diligence should have known that he had sustained a compensable injury.' (citing case) The test of when the injury became manifest is a question of fact, and is the province of the Industrial Commission. * * *"

Other cases in relation to which the injuries were not induced by trauma apply the same rules as to when the claim matures. Illustrative is the case of McGee v. San Manuel Copper Corporation, 89 Ariz. 244, 360 P.2d 1024 (1961).

The Industrial Commission urges that the case of Shepard v. Industrial Commission, 6 Ariz.App. 207, 431 P.2d 102 (1967) is controlling. In our opinion *Shepard* is clearly distinguishable on the facts. We express the same opinion with reference to McCormick v. Industrial Commission, 96 Ariz. 88, 392 P.2d 299 (1964).

The overall tenor of the position of The Industrial Commission is to the effect that since the petitioner was obviously aware of the happening of an unusual incident on 11 May 1963 and since she at that time received medical treatment, that she was on that day as a matter of law chargeable with knowledge that her right to benefits accrued on that day. This position is not a true statement of the law, a matter which is adequately illustrated by the opinions of the Arizona Supreme Court and this Court.

The evidence in the record before us is susceptible of but one interpretation, that is, that the incident of 11 May 1963 was minor or trivial and that it was not

until December 1966 that the petitioner was aware or could reasonably be expected to be aware of the full import and significance of the effect of the injury.

The award is set aside.

E. R. THURMAN and WILLIAM C. FREY, Judges of Superior Court, concur.

NOTE: Chief Judge JAMES DUKE CAMERON and Judge FRANCIS J. DONOFRIO having requested that they be relieved from consideration of this matter, Judges E. R. THURMAN and WILLIAM C. FREY were called to sit in their steads and participate in the determination of this decision.