**Randy W. CONN, Appellant (Employee-Claimant),**

v.

**ED WEDERSKI CONSTRUCTION COMPANY, Appellee (Employer-Defendant).**

**No. 83–13.**

Supreme Court of Wyoming.

Aug. 24, 1983.

Rehearing Denied Sept. 21, 1983.

**650**

Bernard Q. Phelan, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Terry J. Harris, Asst. Atty. Gen., for appellee.

Before ROONEY, C.J., and RAPER,* THOMAS, ROSE, and BROWN, JJ.

THOMAS, Justice.

The question to be resolved by the court in this case is what does § 27–12–606, W.S. 1977, contemplate in providing that:

"* * * an application may be made to the clerk of district court by any party within four (4) years from the date of the last award, * * * for additional benefits of any type or nature or for a modifica-

---

* Retired June 13, 1983, but continued to participate in the decision of the court in this case

tion of the amount of the award * * * on the grounds of mistake * * * "?

The district court held that the appellant was not entitled to reopen his worker's compensation case on the ground of mistake to obtain an award for permanent total disability. The district court found, in addition, that there was not sufficient evidence to justify an award of total permanent disability if the case should be reopened. We agree with the district court as to the first ground of its disposition, and the judgment will be affirmed.

The record discloses that on October 4, 1977, the appellant was injured in a job-related accident while in the employ of Ed Wederski Construction Company, a sole proprietorship. A plywood form used in the pouring of concrete for walls or footings of buildings was dropped by his employer, and it struck the appellant in the lower back. The Worker's Report of Accident or Occupational Disease was filed on October 11, 1977, and thereafter worker's compensation benefits for temporary total disability and medical expenses were applied for and paid without objection. This continued up until September of 1978. The clerk of the district court then received a letter from the specialist in Denver, Colorado, who was treating appellant, which outlined the diagnosis and treatment of the appellant. The letter then continued:

"The condition that we have mentioned is a congenital condition for which his treatment has been directed. Mr. Conn was last seen on August 14, 1978. At this time the patient was advised that he could return to work and the only restriction was that he should not lift any weight greater than 45 lbs. The probability is that this patient should have vocational rehabilitation and in addition, weight reduction and exercises should be instituted.

"It is doubtful that this patient has any permanent residual disability as a result of his industrial accident."

pursuant to order of the court entered June 13, 1983.

The diagnosis which was stated in this letter was spondylolysis with a probable spondylolisthesis of L–5 on S–1.[1]

After the receipt of this letter no claims were presented for payment of benefits with respect to the appellant. While he asserts that he was denied further workers' compensation benefits as a result of the communication from the physician, this argument may overstate his position. His acquiescence in the cessation of benefits is evidenced by a receipt which shows a refund of overpayment of temporary total disability for the period from August 15, 1978, to August 21, 1978. The refund obviously dates from the August 14, 1978, date in the treating physician's letter.

Nothing further occurred in connection with this file until June 17 of 1982, when appellant filed his Petition to Re-open. In presenting his petition the appellant alleged that:

"6. The denial of benefits to claimant was due to mistake pursuant to W.S. § 27–12–606 (Rep.Ed.1979), and this Petition is brought pursuant to that statute."

The Petition to Re-open was contested by the employer and a pretrial conference was set and held. Following the pretrial conference memoranda were filed by the appellant, the employer, and the Worker's Compensation Division of the Office of the State Treasurer of the State of Wyoming, and a hearing was held at which evidence was received in the form of testimony and various exhibits. The district court then entered its Judgment Denying Petition for Re-opening Workmen's Compensation Claim in which the following pertinent findings were made:

"FINDS that there was neither a mistake of fact nor fraud as envisioned under Section 27–12–606 of the Wyoming Statutes, 1977 Republished Edition, as a basis for re-opening the previous award;

"THE COURT FURTHER FINDS that the Employee-Claimant has failed to carry his burden of proof based upon a preponderance of the evidence at the hearing to show that he has any permanent disability as alleged.

"THE COURT FURTHER FINDS that the Claimant-Employee has failed to carry his burden of proof to show that he presently has a compensable claim under the Worker's Compensation Act."

In the judgment the Decision Letter of the court specifically was incorporated by reference as setting forth the Court's Findings, Opinions and Rulings. It is from this judgment that the appellant has taken his appeal.

In the brief of appellant he identifies the issues to be determined in the appeal as follows:

1. Stedman's Medical Dictionary, Lawyer's Edition, p. 1402 (1961), provides the following definitions:

"Spondylolysis—1. Breaking down or dissolution of the body of a vertebra. 2. A cleft formation in the vertebral body. 3. A loosening of the firm attachment of the contiguous vertebrae.

"Spondylolisthesis—Forward subluxation of the body of one of the lower lumbar vertebrae on the vertebra below it, or upon the sacrum."

1C Gray, Attorney's Textbook of Medicine, ¶¶ 17.72(3a) and (3b) (1983), provides the following:

"¶ 17.72(3a) Definitions and Distinctions—Spondylolysis (G. *spondylos,* vertebra + lysis, dissolution) is a condition, possibly due to a congenital anomaly, characterized by flattening of a vertebral body (platyspondylia) and incomplete development of the structures making up the neural arch, but without any displacement of the vertebrae. Spondylolisthesis (G. *spondylos,* vertebra + olisthanein, to slip) is a forward dislocation of one or more vertebrae on the one below. The term spondylolisthesis, in its literal meaning, could properly be applied to any forward dislocation of a vertebra irrespective of cause. It could, for example, be used to describe a forward dislocation produced by trauma which fractures the posterior elements of a normal vertebra. The term, however, is seldom, if ever, used in this broad sense. It is limited to forward displacement that occurs because of the defect in the neural arch found in spondylolysis.

"¶ 17.72(3b) Etiology—The etiology of spondylolysis is unknown, or at least unproved. Two theories of its origin have been advanced. According to the older theory it is a congenital condition; according to the newer theory it is acquired, the result of trauma early in life."

"1. Was there sufficient evidence of 'mistake' to authorize a reopening of Worker's Compensation Claim pursuant to W.S. § 27–12–606 (Rep.Ed.1977)?

"2. Is there a necessity for a petitioner under W.S. § 27–12–606 (Rep.Ed.1977) to prove that a previous treating physician would testify differently at a hearing to reopen?

"3. What degree of evidence is required to prove disability?"

The only brief of appellee was filed by the Wyoming State Treasurer, ex rel. Worker's Compensation Division, and there the articulation of the issues in this appeal is as follows:

"I. WHETHER AN APPLICATION FOR MODIFICATION PURSUANT TO SECTION 27–12–606, W.S.1977, WAS THE PROPER PROCEDURE FOR APPELLANT–CLAIMANT TO HAVE UTILIZED IN PURSUING HIS CLAIM FOR WORKER'S COMPENSATION BENEFITS.

"II. EVEN ASSUMING ARGUENDO THAT IT WAS PROPER FOR APPELLANT–CLAIMANT TO PROCEED UNDER SECTION 27–12–606, W.S.1977, WAS THERE SUFFICIENT EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDING OF NO MISTAKE."

We turn first to the law that we conclude controls the disposition of this case. The pertinent statute, § 27–12–606, W.S.1977, provides as follows:

"Where an award of compensation has been made in favor of or on behalf of an employee for any benefits under this act [§§ 27–12–101 to 27–12–804], an application may be made to the clerk of district court by any party within four (4) years from the date of the last award, or at any time during which monthly payments under an award are being made, for additional benefits of any type or nature or for a modification of the amount of the award on the ground of increase or decrease of incapacity due solely to the injury, or upon grounds of mistake or fraud."

This court has adopted a policy of liberally construing statutes relating to worker's compensation in light of their beneficent purpose. *Matter of Johner,* Wyo., 643 P.2d 932 (1982); *Matter of Barnes,* Wyo., 587 P.2d 214 (1978); *Baldwin v. Scullion,* 50 Wyo. 508, 62 P.2d 531, 108 A.L.R. 304 (1936); *Sakamoto v. Kemmerer Coal Co.,* 36 Wyo. 325, 255 P. 356 (1927). Such statutes will be construed, if rationally possible, so that the industry and not the injured worker will bear the burden of industrial accidents. We have held, however, that we cannot, under the guise of liberal construction, ignore clear statutory provisions and extend the beneficent purpose of the law to injuries which do not reasonably fall within the ambit of the language of the statute. *Matter of Van Matre,* Wyo., 657 P.2d 815 (1983); *Alco of Wyoming v. Baker,* Wyo., 651 P.2d 266 (1982); and *Mor, Inc. v. Haverlock,* Wyo., 566 P.2d 219 (1977).

According to 3 Larson, Workmen's Compensation Law, § 81.10, p. 15–470 (1983), all states have statutory provisions allowing the reopening and modification of worker's compensation awards. We have not discovered any other state which has a statute that is substantially identical to § 27–12–606, W.S.1977. Our Wyoming statute appears to be unique to the extent that it not only provides a means whereby worker's compensation awards can be modified in amount upon application of any party within four years from the date of the last award, or at any time monthly payments under an award are being made, but it also permits application for "*additional benefits* of any type or nature." (Emphasis added.) We interpret the language of this statute to the end that a timely application for benefits may be made by an injured workman subject only to the requirement of showing an increase or decrease in incapacity due solely to the injury, or mistake, or fraud.

Section 27–12–607, W.S.1977, provides in part as follows:

"Every award within the meaning of this act [§§ 27–12–101 to 27–12–804] is a judicial determination of the rights of the

employer, the employee and the disposition of money within the various accounts provided under this act as to all matters involved. * * * "

An award, being characterized as a judicial determination, is subject to the concept of finality. Given this proposition, § 27–12–606, W.S.1977, represents an attempt by the legislature to balance the concept of finality as applied to worker's compensation awards with the need to assure that injured workmen receive the full amount of any benefits to which they are entitled under the law. The grounds, however, for reopening are limited. We are in accord with the analysis presented by Judge Maier in his Decision Letter in which he says in part as follows:

"First, in attempting to apply this statute to the facts of the instant case, it would appear that the petition to reopen has been filed within the statutory period, that is within four years of the last award which was made in August of 1978. Next, it would appear that the petition to reopen is an attempt to obtain for the claimant 'additional benefits of any type or nature'. Finally, is the attempt to obtain additional benefits one based upon the grounds of 'mistake or fraud'? The claimant has neither alleged nor attempted to prove fraud. He bases his claim upon mistake. In his memorandum, the claimant states 'this petition is a petition to reopen the matter which was apparently closed in September, 1978. The basis upon which the petition is grounded is that in September, 1978, a "mistake of fact" was made by the Clerk of the District Court and by the treating physician with regard to the causal connection that Mr. Conn's disability had with the injury which occurred in November 1977.' "

Appellant in the present case does not assert, nor does the record support any finding with respect to, change in his condition, i.e., an "increase or decrease of incapacity due solely to the injury." Appellant argues to this court, as he did to the district court, that he has met the requirements of § 27–12–606, W.S.1977, because his evidence demonstrates a mistake in the diagnosis of his condition as being congenitally related, and he points to the testimony of Dr. Stieg as establishing that the earlier diagnosis was erroneous. We do not agree, however, that the appellant has met his burden of proving a mistake as that term is used in § 27–12–606, W.S.1977.

Other jurisdictions having statutes which provide for the reopening of worker's compensation cases on the ground of mistake have limited relief under their statutes to those situations in which a mistake in the determination of a material fact has been made by a fact finder. *Hughes v. Denny's Restaurant,* Fla., 328 So.2d 830 (1976); *Gosek v. Garmer and Stiles Company,* Iowa, 158 N.W.2d 731 (1968); *Young v. Charles F. Trivette Coal Company,* Ky., 459 S.W.2d 776 (1970); *Twin City Fire Insurance Company v. Foster,* Tex.Civ.App., 537 S.W.2d 760 (1976); 3 Larson, Workmen's Compensation Law, § 81.52, p. 15–542 (Dec. 1982 Supp.); 82 Am.Jur.2d Workmen's Compensation § 597, p. 313; and 101 C.J.S. Workmen's Compensation § 854(r), p. 230. In this case no mistake was made by a fact finder in the determination of any material fact. The cessation of application for and payment of benefits under the Worker's Compensation Act followed the advice from the Denver specialist quoted earlier.

■ The evidence at the hearing in this case demonstrates the absence of the kind of mistake which must be shown under the statute. The appellant called a neurologist and medical director of the Boulder Pain Clinic, who testified that as a result of examination and the study of X rays which were taken he found the condition of spondylolysis which had been diagnosed previously. This doctor discussed the dichotomy of views in the medical profession with respect to the cause of this condition, but he stated that in light of the history which had been obtained from the appellant the question of a congenital defect causing the condition or some other source appeared to be a moot point. He testified that while he was unable to reach a conclusion as to the cause of the spondylolysis he did not agree with

the previous opinion which diagnosed the appellant's condition as related to a congenital defect. He gave his opinion that the appellant was permanently partially disabled for any heavy-duty type work involving lifting, twisting and the like. He would not place a percentage upon the appellant's disability in terms of his whole bodily function, but preferred to state instead his views as to which physical activities the appellant could or could not perform. He did give his opinion that the appellant with the aid of professional help could be rehabilitated to perform sedentary sorts of work in the job market.

The testimony of another physician was presented by the employer by deposition. This physician was an orthopedic surgeon who had initially treated the appellant's back shortly after the 1977 accident. In his testimony he stated his diagnosis of the appellant's condition which was that he did have a pre-existing congenital condition, spondylolysis, which was aggravated as a result of the injury and he indicated the presence of spondylolisthesis. He testified that while he was treating the appellant the appellant complained of considerably more pain than that which would be expected from the injury that he had received. Because his treatment did not seem to be aiding the appellant, this physician referred him to the Denver specialist. The doctor gave his opinion that the appellant was not totally disabled and could return to work subject to a limitation that he not do any heavy lifting.

The appellant himself testified at the hearing. He discussed his educational and work history. He stated that he never had any difficulty with his back prior to the injury and that he previously had been employed in other construction work and working on farms and ranches. He explained that he was injured in an accident while working in October of 1977, and that he had received temporary total disability benefits until September of 1978. He testified that he had been advised by the clerk in the office of the clerk of the district court who was dealing with his file that he could not receive benefits after the letter from the Denver specialist. He stated that he had sought legal aid but had been informed that the Legal Aid Office did not pursue worker's compensation cases.

During his testimony the appellant expressed his anger with the situation and his dissatisfaction with medical treatment which had not been able to relieve his pain. He explained that he had contacted the office of Vocational Rehabilitation which had afforded him assistance by helping him find a job in a local retail hardware outlet. This job, however, involved some lifting and the appellant testified that he would get help whenever he had to do heavy lifting. He was experiencing pain with his back in connection with this job, though, and he eventually quit that job because of pain and family duties. He testified about a series of other jobs, most of which involved somewhat strenuous physical activity, although not all of them did. He stated that he suffered continuing problems from his back which made it difficult for him to maintain steady employment. He did receive some assistance from Vocational Rehabilitation with respect to job training but he was unable to follow through on that because it conflicted with his long hours at the job he then held.

A counselor from the State Vocational Rehabilitation Department testified about the efforts of that office to assist the appellant. It provided counseling and vocational guidance. It had arranged for one employment opportunity and on-the-job training. It had made other efforts at job placement and there even had been a referral to the Southeast Mental Health Center for assistance in helping the appellant deal with depression. In December of 1978, after a position had been obtained with a hardware store in Cheyenne, Wyoming, appellant's case was temporarily closed after a contact in March of 1979. The next contact with the appellant by the office of Vocational Rehabilitation occurred in the spring of 1981 when he was called in for an annual review of his situation. In August of that year he was enrolled in college to study electronics, and his tuition and books were

paid for by the office of Vocational Rehabilitation. The appellant did not finish the semester at school, and he advised the department that he was quitting due to financial pressures in November of 1981. The office of Vocational Rehabilitation then sent the appellant to the Boulder Pain Clinic in December of 1981, and he was treated there. Other efforts at job placement and retraining were continued into June of 1982, but they all proved unsuccessful.

The counselor for Vocational Rehabilitation did give an opinion that the appellant was vocationally disabled by a combination of things so that he could not be employed in the areas of his experience and training at the time of his injury. This evaluation was based upon a variety of information, including the medical reports which that department received from the Boulder Pain Clinic, the psychological evaluation of the appellant by the Southeast Mental Health Center, and the appellant's own statements to the department. The counselor could not say, however, whether the appellant's disability was a result of his injury or the other factors.

While the evidence before the court has been stated briefly, it does not indicate in any way a mistake of fact on the part of the fact finder. At its best the evidence of the appellant would show that there is a divergence of medical views with respect to whether the condition of spondylolysis is acquired or is congenital in nature. All of the medical experts agreed upon the identification of the appellant's condition and his physical limitations. The situation of the appellant is quite like that of the claimant in *Gosek v. Garmer and Stiles Company*, supra, 158 N.W.2d at 732, with the Iowa court stating:

> " * * * [I]f a claimant sustained compensable injuries of which he was fully aware at time of prior settlement or award, but for some unexplainable reason failed to assert it, he cannot, for the first time on subsequent review proceedings, claim additional benefits. * * * "

It should be recalled that no claim was made by the appellant for compensation benefits subsequent to the receipt by the clerk of the district court of the letter from the Denver physician in 1978 up until the present petition was filed in June of 1982.

While our holding makes it unnecessary to reach the question of the sufficiency of the evidence, we do note that the appellant was not successful in presenting any opinion as to permanent disability nor any opinion with respect to a percentage of disability of his entire body. Under the circumstances, even had a mistake been shown which would have justified the district court in reopening this case, the evidence of record reflected the opinions of two physicians that there was no permanent total disability as compared with the views of another physician that there was a permanent disability with respect to which he would assign no percentage. Such a record either would be susceptible to a conclusion by the district court that there was no permanent disability or to a holding which the district court in fact did make that the claimant had failed to carry his burden of proof with respect to a presently compensable claim. See *Cardin v. Morrison-Knudsen*, Wyo., 603 P.2d 862 (1979), in which the history recited in the opinion demonstrates the necessity of some statement of total disability or if the disability is partial an opinion as to the percentage thereof.

We hold that in this instance the record did not demonstrate a mistake as that word is used in § 27–12–606, W.S.1977, and therefore the requirement for the presentation of the application to the clerk of the district has not been shown by the appellant. The order of the district court denying the appellant's petition to reopen his worker's compensation case is correct, and it is affirmed.