The STATE of Wyoming, ex rel. WYO-MING WORKER'S COMPENSATION DIVISION, Appellant (Objector-Defendant),

v.

Monty COLVIN, Appellee (Employee-Claimant).

Monty COLVIN, Appellant (Employee-Claimant),

v.

The STATE of Wyoming, ex rel. WYO-MING WORKER'S COMPENSATION DIVISION, Appellee (Objector-Defendant).

Nos. 83–238, 83–239.

Supreme Court of Wyoming.

May 10, 1984.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., Terry J. Harris, Asst. Atty. Gen., for appellant, State of Wyoming, in No. 83–238 and appellee in No. 83–239.

R. Douglas Dumbrill of Hughes & Dumbrill, Sundance, for appellee Monty Colvin, in No. 83–238 and appellant in No. 83–239.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN, and CARDINE, JJ.

BROWN, Justice.

This is an appeal and cross-appeal from an order awarding worker's compensation benefits to employee-claimant Monty Colvin for a work-related injury. The State of Wyoming claims that there was insufficient evidence to support the award, and the claimant argues that he should have been awarded more.

We affirm.

The statement of the issues presented by the state is:

"I. Whether a permanently partially disabled employee, entitled to compensation under the statutory schedule contained in Section 27–12–403(c), W.S.1977, may elect to receive a larger recovery under Section 27–12–403(h), W.S.1977, the larger recovery brought about by what the district court perceived to be an element of vocational disability?

"II. If the specifically scheduled recovery provided for in Section 27–12–403(c), W.S.1977, is not claimant's exclusive remedy, whether there was sufficient evidence to support the district court's holding that claimant suffered from a fifty percent (50%) permanent partial disability to the right arm above the elbow?"

The state conceded the first issue during oral argument; therefore, we will only address the second issue.

The issue raised by Colvin on appeal is whether he is entitled to receive compensation provided for under § 27–12–403(c), W.S.1977 (June 1983 Replacement), due to the partial loss of a metacarpal bone in addition to the award granted by the trial court.

Claimant was involved in an accident at the Johnson Sawmill while he was removing timber from the bucking saw platform when the counter weight fell off, and the saw fell on his right hand. Claimant lost his right index finger completely and the head of the second metacarpal bone. There was some nerve and tendon damage which had to be repaired in the long finger, causing considerable loss of function to the long finger. There was also evidence that there was permanent soft tissue injury in claimant's hand which caused a slight loss of function of the thumb due to a nicked extensor tendon. At trial Dr. Conrad F.J. Blunck testified that these injuries translated into an approximate 34 percent impairment to the use of the upper right arm.

Additionally, evidence at trial showed that Colvin was trained as a mechanical draftsman but was temporarily working at the sawmill because he had been layed off from his usual work as a mechanical draftsman. Because of his injuries, his ability to perform work as a draftsman had been diminished by at least 50 percent.

After hearing the evidence and arguments of counsel, the trial court found that the permanent partial disability of the claimant was a 50 percent loss of the right arm above the elbow, and awarded him $17,503.50.

■ We first address the state's sufficiency of the evidence issue. A trial court's finding of disability and percentage of disability will not be overturned or modified by this court on appeal when there is substantial evidence to support such findings. *Schepanovich v. United States Steel Corporation*, Wyo., 669 P.2d 522 (1983). Also, the claimant, as appellee, is entitled to have the evidence in support of his claim taken as true and given every favorable inference which fairly and reasonably may be drawn from it. As we have repeatedly said, testimony in conflict with that of the prevailing party may be disregarded. *Exploration Drilling Company v. Guthrie*, Wyo., 370 P.2d 362 (1962).

Section 27–12–403(c), W.S.1977, states:

"(c) For any permanent partial disability hereinafter described, the employee shall receive a total award equivalent to two-thirds (⅔) of the state's average weekly wage for the twelve (12) months preceding the quarter in which the injury occurred, as determined in W.S. 27–386, multiplied by the following number of weeks:

\* \* \* \* \* \*

"(ii) For the loss of a first finger ............................. 29 weeks

"(iii) For the loss of any other finger ............................. 15 weeks

"(iv) For the loss of a palm (metacarpal bone) .......................... 115 weeks

"(v) For the loss of a hand ...... 122 weeks

\* \* \* \* \* \*

"(vii) For the loss of arm above elbow...........................' ........... 150 weeks
\* \* \* "

Section 27–12–403(h), W.S.1977 (June 1983 Replacement), also deals with permanent partial disabilities, and provides:

"(h) For any other injury known to surgery or medicine to constitute permanent partial disability, the employee shall receive compensation in the amount proportional to the extent of permanent partial disability based as near as may be upon the foregoing schedule. One (1) factor to be considered is the ability of the employee to continue to perform work for which he was reasonably suited by experience or training prior to the injury."

The state contends that there was insufficient evidence to support a finding of 50 percent permanent partial disability to the right arm above the elbow. The state bases its contention on three grounds: (1) all of the witnesses, other than the doctor, are close to and or related to claimant; (2) all of the witnesses, other than Dr. Blunck, are nonmedical witnesses; and (3) all limit their testimony to the effect claimant's injury had upon his ability to perform mechanical drafting tasks rather than the effect of the injury on claimant's ability "to perform work for which he was reasonably suited by experience or training prior to the injury." Section 27–12–403(h), W.S.1977.

■ The trial court is in a better position to judge the demeanor, truth and veracity of the witnesses. It is obvious from the trial court's determination of this case that it was persuaded by the testimony of the nonmedical witnesses, including the claimant. It is within the prerogative of the trier of fact to decide what evidence is most dependable. *Cederburg v. Carter*, Wyo., 448 P.2d 608 (1968). This we will not disturb on appeal.

The state further argues that there must be some opinion given as to a percentage of claimed permanent partial disability and that absent such opinion, the record would be susceptible to a finding that claimant had failed to carry his burden of proof as required in *Conn v. Ed Wederski Construction Company*, Wyo., 668 P.2d 649

(1983). The state goes on to point out that § 27–12–403(h), W.S.1977, indicates that a medical opinion must be given as to the permanent partial disability because it must be an "injury known to surgery or medicine to constitute permanent partial disability." From this the state reasons that the testimony of non-medical witnesses is not sufficient to meet the requirements for an opinion as required in *Conn*, supra, and § 27–12–403(h), W.S.1977.

*Conn*, supra, indicates that an opinion must be presented as to the percentage of permanent partial disability. In *Conn*, however, it was the opinion of two physicians that there was no permanent total disability and the opinion of another physician that there was a permanent disability with respect to which he would assign no percentage of impairment.

In this case we have the opinion of a physician who finds permanent partial disability and assigns a 34 percent loss of function to the right upper extremity. The state urges that the trial court was, therefore, bound by the opinion of the testifying physician and could not award a greater percentage of disability.

 Section 27–12–403(h), W.S.1977, allows the trial court to take into consideration the claimant's decreased ability to perform work for which he was reasonably suited before the injury. The physician was not qualified, by his own admission, to testify as to the claimant's decreased ability to perform his preinjury occupation. The trial court, therefore, took testimony from witnesses familiar with the claimant, his occupation, and the claimant's ability to engage in that occupation after the accident. The trial court also heard testimony from the claimant himself concerning the detrimental effect the injury had on his ability to continue in his profession. After hearing such testimony, the trial court increased the percentage of disability from 34 percent to 50 percent. In this we find no error.

 The state next argues that mechanical drafting was not the only work for which Colvin was reasonably suited by experience or training before the injury. Section 27–12–403(h), W.S.1977. A plain reading of the statute would indicate to us that the trial court properly considered the impairment to claimant's ability to perform mechanical drafting tasks. Claimant had both training and experience in the mechanical drafting field and considered it his profession. We believe that the statute was designed to allow the trial court to consider the work for which a claimant was suited before the injury and how he was impaired in performing this work after the injury when determining the compensation a claimant should receive.

In his cross-appeal claimant contends that the uselessness of his second metacarpal bone should have been compensated for under § 27–12–403(c)(iv), W.S.1977, which provides compensation for "the loss of palm (metacarpal bone)." The metacarpal bones form the skeleton of the palm. The head of each metacarpal bone supports the bones of the digits. There are five metacarpal bones, one for each digit. Text Book of Anatomy, Cunningham, 5th ed., p. 223. Therefore, the right second metacarpal bone supports the index finger of the right hand. Claimant lost the right index finger and the head of the second metacarpal bone in the accident.

 The state argues that the statute specifies the loss of an entire palm and the parenthetical language simply points out that the palm is made up of metacarpal bones. The testimony at trial indicated that the claimant lost only the head of his second metacarpal bone, to which the physician assigned no specific percentage impairment other than that assigned for the loss and partial loss of the fingers and thumb and the arm above the elbow. The testifying physician's opinion concerning a percentage impairment took into consideration the entire injury which claimant suf-

fered, that is, loss of the index finger and head of the metacarpal bone, and damage to the long finger and thumb. Therefore, an additional award for the loss of the palm would constitute double recovery. A claimant cannot properly be compensated for the partial loss of his entire arm and also be compensated for the individual injuries to the same member.

Affirmed.