STATE of Wyoming, ex rel., WYOMING WORKERS' COMPENSATION DIVISION, Appellant (Petitioner),

v.

Anne BORODINE, Appellee (Respondent).

No. 89–172.

Supreme Court of Wyoming.

Dec. 21, 1989.

Joseph B. Meyer, Atty. Gen., and Ronald Arnold, Sr. Asst. Atty. Gen., for appellant.

George Santini, Graves, Santini & Villimez, P.C., Cheyenne, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

THOMAS, Justice.

The problem presented in this case is whether the Wyoming Worker's Compensation Act, §§ 27–12–101 through 27–12–805, W.S.1977, should be applied in a manner that limits an individual's choice of employments. The hearing officer entered an award in favor of the employee, Anne Borodine (Borodine), that was premised upon a disability relating to the employment in which Borodine was injured. That award was granted even though the hearing officer also found that it did not affect Borodine's ability to work in a more sedentary employment in which she had both formal training and experience. Upon review, the district court affirmed the award entered by the hearing officer. We find no error in the determination of the hearing officer, and we affirm the ruling of the district court.

In this appeal, the Worker's Compensation Division of the State of Wyoming (State) advances two issues. These are:

"1. Whether the administrative hearing officer erred as a matter of law by finding that appellee had a loss of earnings capacity despite the fact that the hearing officer found the appellee could return to former, higher paying employment.

"2. Whether the administrative hearing officer's findings of fact are supported by substantial evidence."

Borodine expresses the problem with the statement of a single issue:

"Is the award of twenty percent (20%) permanent partial disability entered by the Hearing Officer supported by substantial evidence?"

Borodine injured her back and her right wrist in a work-related accident on January 9, 1986. She then was employed as a painter/sandblaster with Western Coating & Sandblasting. On June 30, 1987, the District Court for the Third Judicial District entered an order finding that the January 9, 1986 accident had caused an injury to Borodine's back and a carpal tunnel injury to her right wrist. In May of 1988, Borodine received an award of permanent partial disability of five percent of the whole body based upon the work-related injury to her back. She did not, at that time, receive any award for the injury to her wrist. On September 21, 1988, she filed an Application and Claim for Permanent Total Disability Benefits. The State objected to this claim and, on February 28, 1989, a contested case hearing was conducted by the hearing officer, pursuant to § 27–14–602, W.S. 1977 (Cum.Supp.1987).

Borodine testified at the contested case hearing and was subject to cross-examination by the State. She explained the facts relating to her injuries and her previous experience and training in various employment situations. The State relied upon the testimony of an independent consultant with a master's degree in petroleum geology to support its theory. Both sides stipulated to the admissibility of various exhibits, and the State particularly relied upon a Professional Rehabilitation Management Report. The State urged that the evidence demonstrated Borodine's prior experience and training as a geologist, and that her ability to perform work-related duties in that profession was not diminished by the accident which injured her back and her wrist.

On March 15, 1989, the hearing officer entered his Findings of Facts, Conclusions of Law and Order in which he granted Borodine an award for permanent partial disability in the amount of twenty percent of the body as a whole in addition to the five percent permanent partial physical impairment award made in May of 1988. In the findings portion of his order, the hearing officer compared Borodine's salary of $600 per week as a union painter with her salary of $175 per week as a bartender (the occupation she was pursuing at the time of the hearing). The hearing officer noted

that Borodine's physical limitations prevented her from continuing in her secondary employment as a union painter. Based upon the evidence and the testimony presented at the hearing, it was the hearing officer's conclusion "that there [had] been a significant decrease in [Borodine's] earning capacity as a result of her work-related injuries preventing her from returning to work in her secondary employment as a union painter and that she [was] entitled to worker's compensation disability benefits in order to fully and adequately compensate her for such loss." The hearing officer also found "that in order to return [Borodine] to her previous level of earning capacity, it [was] both appropriate and necessary that she receive further education and training." The hearing officer noted that the disability award was compensation not only for Borodine's five percent physical impairment, but also for her loss of earning capacity.

On April 21, 1989, the State filed in the district court a Petition for Judicial Review of the hearing officer's decision. The district court reviewed the record and briefs submitted by the parties before entering its Order Denying Petition for Review on July 13, 1989. The district court affirmed the award made by the hearing officer, and the State appealed from that order to this court.

The record demonstrates that Borodine had not only formal education but experience and additional training as a field geologist. Because of a slump in the petroleum industry she had sought employment as a painter/sandblaster, and she was pursuing that occupation at the time of her injury. Her prior experience and training as a painter/sandblaster enabled her to rely on that occupation as a secondary source of employment. The evidence that Borodine cannot return to her work as a painter because of her injuries is not contested in this record.

The State argues that the hearing officer erred, as a matter of law, in interpreting § 27–12–403(h), W.S.1977 (June 1983 Repl.), which provides, in pertinent part:

"* * * One (1) factor to be considered is the ability of the employee to continue to perform work for which he was reasonably suited by experience or training prior to the injury."

Section 27–12–403(h), W.S.1977 (June 1983 Repl.), has been amended and renumbered as § 27–14–405(b)(xvi), W.S.1977 (June 1987 Repl.), with the relevant language being identical. The State contends that a proper statutory construction of this provision must focus on "what effect did Appellee's injury have on her ability to work at any jobs—not just the sandblasting/painting jobs." The State asserts that "[i]f an injured worker has the physical ability to return to a job for which she had prior experience and training, then there is no 'loss of earnings capacity.'" The State then emphasizes the finding by the hearing officer that Borodine could return to work as a geologist, and the State's conclusion is that, as a matter of law, the finding, when related to a correct construction of the statute, prevented any award to Borodine for loss of earning capacity. Borodine's response is that the evidence does support the hearing officer's conclusion that there has been a substantial diminution of her earning capacity as a painter/sandblaster, and the award should, for that reason, be affirmed.

For more than fifty years, we have accepted the principle that the "provisions of the [Wyoming] Workmen's Compensation Act * * * should receive a liberal construction to accomplish the benevolent purpose for which they were promulgated." *Baldwin v. Scullion*, 50 Wyo. 508, 62 P.2d 531, 538 (1936). A correlative concept is that it is the worker, not the industry, who is the intended beneficiary of the worker's compensation provisions.

We also have ruled that when an injury deprives the worker of the ability to rely on prior experience and training in a particular occupation, which results in a decrease of the worker's earning capacity, the injured workman is entitled to compensation. In *McCarty v. Bear Creek Uranium Company*, 694 P.2d 93, 95 (Wyo.1985), in discussing loss of earning capacity, we quoted with approval from *Vetter v. Alaska Work-*

*men's Compensation Board*, 524 P.2d 264, 266 (Alaska 1974), the following:

> " 'The concept of disability compensation rests on the premise that the primary consideration is not medical impairment as such, but rather loss of earning capacity related to that impairment. An award for compensation must be supported by a finding that the claimant suffered a compensable disability or, more precisely, a decrease in earning capacity due to a work-connected injury or illness. Factors to be considered in making this finding include not only the extent of the injury, but also age, education, employment available in the area for persons with the capabilities in question, *and intentions as to employment in the future.*' " (Emphasis added.)

The extent of the injured worker's disability pursuant to the loss of earning requirement becomes a question of fact. Any evidence, medical and non-medical, that is relevant may be considered by the hearing officer. *Matter of Injury to Van Buskirk*, 741 P.2d 120 (Wyo.1987); *State, ex rel. Worker's Compensation Division v. Lewis*, 739 P.2d 1225 (Wyo.1987).

The application of the statute that the State urges is not novel. It made essentially the same argument in *State, ex rel. Worker's Compensation Division v. Colvin*, 681 P.2d 269 (Wyo.1984), when the effort was to shift the focus away from a loss of earning capacity in employment as a mechanical draftsman. There the State contended that the district court had erred in granting Colvin a disability award. Colvin had been trained as a mechanical draftsman, but he had been laid off from his job in that employment and, at the time of his injury, he was temporarily employed at a sawmill. In an accident in the sawmill, he lost a finger and suffered additional injuries to his drafting hand. Medical testimony established that Colvin's injuries resulted in an approximate 34 percent impairment in the use of his upper right arm, and the district court held that his work-related injuries justified a fifty percent permanent partial disability award with respect to his ability to perform work as a draftsman. The State's position, among other arguments, was that, because Colvin had experience and training that permitted him to pursue employment in other areas than working as a mechanical draftsman, he had suffered no compensable disability due to the injuries to his hand. It argued that the district court should discount the negative effect of Colvin's injuries on his earning capacity as a draftsman because he could seek employment elsewhere. The argument then was premised upon the State's interpretation of § 27–12–403(h), W.S.1977 (June 1983 Repl.).

In *Colvin*, 681 P.2d at 272, we rejected the State's proposed construction of the statute saying:

> "We believe that the statute [§ 27–12–403(h), W.S.1977 (June 1983 Repl.)] was designed to allow the trial court to consider the work for which a claimant was suited before the injury and how he was impaired in performing this work after the injury when determining the compensation a claimant should receive."

We held that Colvin was entitled to compensation because of the effect of the injury on his earning capacity as a mechanical draftsman, without regard to whether other employment was available. The thrust of that ruling was that Colvin's loss of prior experience and training as a draftsman constituted a compensable disability. If we should permit sophistry to erode the basic principles underlying the legislature's enactment of the worker's compensation laws (see *Baldwin*, 62 P.2d 531), incongruous results undoubtedly would occur.

*Colvin*, stands for the proposition that in applying § 27–12–403(h), W.S.1977 (June 1983 Repl.), one of the factors to be considered is the claimant's ability to perform work for which that person is reasonably suited. *Worker's Compensation Claim of Cannon v. FMC Corporation*, 718 P.2d 879 (Wyo.1986). The language that the court invoked is clear to the end that it establishes that an injured employee's ability to perform work for which that person is reasonably suited is just *one* of the factors to be addressed in deciding how the injury affected earning capacity. At least in part, that focus must rest upon

whether the injury will prevent or hinder the injured worker from continuing in, or returning to, an occupation for which that person has the proper training and experience. If it does, the worker has suffered a loss in earning capacity insofar as the prior experience and training qualified the worker for that particular occupation, and a compensable disability does exist without regard to whether or not the worker can pursue some different type of employment for which that person is reasonably suited.

█ Certainly, that factor is only one consideration with respect to worker's compensation awards. In 1933, this court recognized that "[t]he permanent partial disability award * * * has regard primarily to the loss or impairment of a body member or function. *This loss or impairment may or it may not result in reduction of earning power.* It does deprive the employee of something of great value to him, and hence the legislature deemed it proper that the industry should make compensation therefor." *In re McConnell*, 45 Wyo. 289, 18 P.2d 629, 633 (1933) (emphasis added). The clear import of this language is that an injured workman is entitled to compensation for a disabling injury even though it may have little impact on earning capacity. Under our law, an employee can be compensated for either or both.

█ In analyzing the sufficiency of the evidence to support the hearing officer's determination:

"We examine the entire record to determine if there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency, and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the conclusions of the agency. It is more than a scintilla of evidence." *Hohnholt v. Basin Electric Power Co-op*, 784 P.2d 233, 234 (Wyo. 1989), quoting from *Trout v. Wyoming Oil & Gas Conservation Commission*, 721 P.2d 1047, 1050 (Wyo.1986).

The application of this appropriate standard of review to the record in this case discloses substantial evidence to support the determination of the hearing officer that Borodine's earning capacity in the secondary employment of a painter was substantially diminished. We noted earlier that her loss of earning capacity is a question of fact to be resolved by the finder of fact, and substantial evidence to support that finding being encompassed in the record, the determination by the hearing officer must be affirmed. The essence of the problem presented in this case is not whether Borodine could return to geology and, for that reason, would not suffer a loss in earning capacity. Instead, the hearing examiner properly determined that Borodine no longer can rely on her prior experience and training as a union painter for her income. Because that capacity has been substantially diminished, Borodine did suffer a true loss of her earning potential. Nothing in our law requires Borodine to choose the employment which would not suffer diminution in earning capacity because of her injuries. See *McCarty*, 694 P.2d at 95. In accord with the analysis and interpretation of the law in *Colvin* and *Cannon*, Borodine is entitled to compensation for the loss of her earning capacity in her employment as a painter. The determination by the hearing officer, as affirmed by the district court, that Borodine was eligible for benefits under the statute is consistent with the statute and our precedent; and it is supported by substantial evidence.

The award entered by the hearing officer is affirmed.

MACY, Justice, dissenting.

I dissent. Contrary to the majority, I am of the opinion that Borodine failed to prove a loss of earning capacity or a true loss of her earning potential. Unlike Colvin, Borodine was not impaired from carrying on her primary profession for which she had training and experience. The legislature did not intend to compensate people for doing less

than what they have a capacity or desire to do.