STATE of Wyoming, ex rel. WYOMING WORKER'S COMPENSATION DIVISION, Petitioner (Objector–Defendant),

v.

Wesley M. WHITE, Respondent (Employee–Claimant).

No. 91–191.

Supreme Court of Wyoming.

Sept. 25, 1992.

Joseph B. Meyer, Atty. Gen. and Joe MacGuire, Asst. Atty. Gen., for appellant.

George Santini of Graves, Santini & Villemez, Cheyenne, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

* Chief Justice at time of oral argument.

CARDINE, Justice.

Wesley White, appellee, received a worker's compensation 51 percent permanent partial disability award as a result of an administrative agency contested case hearing. The State of Wyoming appeals the Order Awarding Permanent Partial Disability Benefits.

The award is modified and, as modified, affirmed.

The issue presented for our determination, as stated by appellant, is:

> Did the hearing examiner base his award of permanent partial disability on some evidence, or was it based purely on speculation?

White was employed by TCI Cablevision as a cable installer. He sustained a low back herniated disc injury in a accident in the course of his employment when a gust of wind caught a 28–foot ladder being unloaded. White was 28 years of age at the time of the accident, a high school graduate, and was earning $6.49 per hour with TCI. His prior employment consisted of working as an apprentice electrician, cable installer, dock worker, and in construction work. His highest pay was $14 to $16 per hour as an apprentice electrician. His hourly pay at other work was: $4.00 with Fitch Electric; $6.25 to $7.25 with Union Pacific Railroad; $6.00 to $9.00 with Wayne's Electric; and $9.50 with Vandree Electric.

The parties agree that White's physical impairment was 11 percent. The amount of that award was paid by the State without objection. However, the State now claims that half of that award, or 5½ percent, was mistakenly paid and should be recouped as a credit against any award for loss of earning capacity. The State concedes that it "does not take issue with the fact that the Appellee is entitled to an award for the vocational loss," but states its only objection is that the award is based upon speculation and not upon facts and evidence.

■ Wyoming Statute 27–14–405(b)(xvi) provides in pertinent part the source for an award for loss of earning capacity as follows:

> One (1) factor to be considered is the ability of the employee to continue to perform work for which he was reasonably suited by experience or training prior to the injury * * *.

The award in this case was for disability caused by impairment of earning capacity which is loss of the ability to perform work for which White was reasonably suited by experience or training. Impairment of earning capacity is determined by taking into consideration the following factors:

> (a) Physical impairment—the nature and extent of injury.
>
> (b) The worker's age.
>
> (c) The worker's education.
>
> (d) Ability to continue pre-injury employment.
>
> (e) Post-injury employment prospects.
>
> (f) Pre-injury earnings.
>
> (g) Post-injury earnings.

No single factor of those listed above is determinative of the extent or existence of loss of earning capacity. They are all evidence to be considered together with all of the other facts and circumstances in determining whether a loss of earning capacity in fact occurred and, if so, the percentage of loss. *McCarty v. Bear Creek Uranium Co.*, 694 P.2d 93 (Wyo.1985).

The State at first objected to White's claim for a permanent partial disability award for impairment of earning capacity. Then, at the hearing on White's claim, it conceded an eight percent loss of earning capacity based upon the difference between earnings at the time of injury and evidence that he could be employed in a sedentary electrical job at $6 per hour. We have said that loss of earnings is evidence which may be considered, but such loss does not necessarily establish the loss of earning capacity which may be more or less than the loss of earnings. *McCarty.*

The struggle over compensation for impairment of earning capacity most often surfaces when the worker is trained and can work in occupations, some of which pay more and some less than the employment engaged in at the time of injury. For example, suppose that a worker can be employed in six different occupations. Because of physical injury he has lost the ability to work in four of those occupations. But he can earn more in the two occupations remaining than he could in any of the four no longer available. Has he suffered a loss of earning capacity? If only his pay when employed in one of the occupations remaining to him is considered, the answer must be no. But if his ability to be employed when the higher pay may not be available is considered, then clearly there is a loss of earning capacity. It is this loss that is compensated pursuant to the provision of W.S. 27–14–405(b)(xvi), "ability of the employee to continue to perform work for which he was reasonably suited by experience or training * * *."

■ The nature and extent of disability are factual determinations to be made by the hearing officer from the testimony and evidence adduced. *Banda v. State ex rel. Workers' Comp. Div.*, 789 P.2d 124 (Wyo. 1990). The hearing officer's findings of fact as stated in the decision letter were:

> Employee–Claimant is 30 years old. Employee–Claimant obtained his high school diploma in 1978. His work history prior to the March 28, 1989, compensable back injury included the cable installer position held at TCI Cablevision, where Employee–Claimant's ending wage rate was $6.49 per hour. Prior to that, Employee–Claimant held employment as an apprentice electrician with various employers, earning hourly wage rates of approximately $4.00 (Fitch Electric), $6.25 to $7.25 (Union Pacific Railroad), $7.50 (Texas Oil Electric), $6.00 to $9.00 (Wayne's Electric), and $9.50 (Vandree Electric). Employee–Claimant's employment as an apprentice electrician with these various employers spanned the period 1978 through 1987. At various times during this period, Employee–Claimant also held employment as a casual dock worker at Consolidated Freightways, earning an equivalent wage rate of approximately $7.81 per

hour, a computer operator at First Wyoming Bank Corporation, earning approximately $6.00 per hour, various construction work with his father's business, and commercial electrical work in the Los Angeles, California, area, earning approximately $14.00 to $16.00 per hour. A majority of Employee–Claimant's pre-injury work experience was as an apprentice electrician. [footnote omitted]

Judicial review of agency action, is governed by W.S. 16–3–114(c) which provides:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

\* \* \* \* \* \*

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

\* \* \* \* \* \*

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

■ The standard of review to which we adhere is found in *Hohnholt v. Basin Electric Power Co-op*, 784 P.2d 233, 234 (Wyo.1989), wherein we state:

We examine the entire record to determine if there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency, and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the conclusions of the agency. It is more than a scintilla of evidence.

*quoting Trout v. Wyoming Oil & Gas Conservation Comm'n*, 721 P.2d 1047, 1050 (Wyo.1986).

In *State ex rel. Wyoming Worker's Comp. Div. v. Colvin*, 681 P.2d 269 (Wyo. 1984), the worker lost part of his hand as a result of an injury while employed in a sawmill. He was trained and had previously been employed as a mechanical draftsman. An award for loss of earning capacity was affirmed. In *State ex rel. Wyoming Worker's Comp. Div. v. Borodine*, 784 P.2d 228 (Wyo.1989), the worker was a trained, experienced geologist. She was injured while employed as a painter/sandblaster and could no longer perform that work. Her injury would not have prevented her from returning to the higher paying occupation as a geologist. An award for her loss of earning capacity was affirmed.

■ In this case the hearing officer awarded White a 40 percent permanent partial disability for impairment of earning capacity. Although the precise basis for the award is not apparent from the record, we do note that White's highest pre-injury pay for electrical work in the Cheyenne area was $9.50, and there was testimony that post injury he could probably be employed at $4.00 to $5.00 per hour. The wage differential approximates the 40 percent award by the hearing officer. We have repeatedly said that wage differential alone is not determinative of the loss of earning capacity. Where, however, the loss of earning capacity is consistent with the award, as in this case, and it, considered with all other evidence, is substantially in favor of the award, it is held sufficient. In this case there was substantial evidence to support the award of the hearing officer.

Finally, we note that the hearing officer did not give the State credit for the 5½ percent physical impairment award mistakenly paid. Wyoming Statute 27–14–605(a) provides:

If a determination is made in favor of or on behalf of an employee for any benefits under this act, an application may be made to the division by any party within four (4) years from the date of the last payment for additional medical and disability benefits or for *a modification of the amount of benefits* on the ground of

increase or decrease of incapacity due solely to the injury, or *upon grounds of mistake or fraud.* [emphasis added]

The term "mistake" in this statute refers to a mistake in the determination of a material fact that has been made by a fact finder. *Conn v. Ed Wederski Const. Co.,* 668 P.2d 649, 653 (Wyo.1983). Thus, where a hearing examiner erroneously granted benefits to a claimant who was later determined to be ineligible, the trial court acted properly on the claimant's petition by granting relief from the earlier order, terminating benefits and imposing a lien for repayment of the benefits. *Mini Mart, Inc. v. Wordinger,* 719 P.2d 206 (Wyo.1986).

The State at the hearing in this case stated in its opening argument:

> Your Honor, the State's position in this case * * * is that Mr. White was injured and he was assessed as having an 11 percent physical impairment. However, I'd like to bring to the Court's attention that a careful reading of the physical impairment as it was put forth by the physician indicated that he allocated half of the 11 percent to prior injuries and then half of the 11 percent to the current March 1989 injury.
>
> So in fact he should have had a five-and-a-half percent physical impairment for this particular case. Through an error made by the Division he was actually paid for the full 11 percent. So our position is that he rightfully received five-and-a-half percent and he received an additional five-and-a-half percent which we are going to consider part of the vocational.

A footnote to the hearing examiner's decision letter states:

> The evidence indicates that the Wyoming Workers' Compensation Division awarded Employee–Claimant the entire 11% permanent impairment, despite prior notification that one-half of the impairment pre-existed Employee–Claimant's March 28, 1989, compensable injury. Accordingly, the Division now requests that the "overpayment" be applied to offset any amount of additional permanent disability compensation awarded Employee–Claimant.

Later in the opinion, however, when the hearing officer made the award, he did not give the State credit for the 5½ percent mistakenly paid. Instead, the decision letter simply states that:

> Employee–Claimant will be awarded a permanent partial disability of 51%, whole body. This award is intended to be the total amount to be awarded for Employee–Claimant's compensable permanent disability and, accordingly, includes the 11% physical impairment previously awarded. The remaining 40%, whole body, is to be paid Employee–Claimant on a monthly basis over the next 24 months, at the monthly rate of $1,029.04.

It seems clear that the hearing officer was aware of the State's claim and agreed that 5½ percent had been mistakenly awarded but neglected to give the State credit against the total benefit award for the mistaken overpayment. The hearing officer explicitly broke the award into two components: the eleven percent already awarded and the forty percent newly awarded. This breakdown did not include credit for the 5½ percent overpayment.

If the order were somehow ambiguous, or we could ascertain that credit was granted as part of the 51 percent award, we might hold differently. However, under the circumstances, the State is rightfully entitled to recoup the mistakenly-paid portion by repayment or credit against the future award. Accordingly, the order of award is modified by reducing the total amount to 45½ percent. Eleven percent of the total having been paid, there is due appellee the balance of his permanent partial disability award of 34½ percent to be paid over 24 months as ordered by the hearing officer.

The award, as modified, is affirmed.